<hr />

EASTERN WISCONSIN RAILWAY & LIGHT COMPANY and another, Respondents, vs. HACKETT, Receiver, Appellant.

*February 20—May 8, 1908.*

*Pleading: Consolidated action: Municipal corporations: Street railways: Regulations: Ultra vires: Federal question: Franchises: Statutes: Construction: Ordinances: Validity: Power of city council: Declaring contracts void: Equity: Quia timet: Judgment: Construction: Joint use of tracks by street railways: Recognition of existing company's rights.*

1. When suits are consolidated, the order of consolidation should require the title of the cause and the pleadings to be amended to conform thereto. The practice of retaining all the original and amended pleadings in each action and presenting them as the pleadings in the consolidated action is not approved.

Eastern Wisconsin R. & L. Co. v. Hackett, 135 Wis. 464.

2. A city was empowered by its charter to regulate the use of its streets, the operation of street railways, and the laying of tracks for the same; a street railway franchise, granted by such city, declared that all switches and turnouts should be laid under the direction of the board of public works; sec. 1862, Stats. (1898), provides that street railways shall be subject to such regulations as the municipal authorities may by ordinance prescribe. *Held* that, in view of the provisions of the charter, the franchise, and the statute, resolutions of the city prohibiting the construction by a street railway company of switches or connecting tracks on a city bridge or its approaches were not *ultra vires.*

3. A determination as to the validity of such resolutions does not involve a federal question.

4. A city ordinance granting an interurban railway the right to construct its tracks and operate in the streets and prohibiting the doing by it of a street railway business, merely authorizes the corporation to use the streets with the consent of the city as against the public, but not as against private owners, and is not enacted under sec. 1862, Stats. (1898).

5. A city ordinance granting to an interurban railway company a right to occupy certain streets contained a proviso in favor of an existing urban railway company that no more than two tracks, including those theretofore laid or existing, or which any other railway company had a right to lay under existing franchise or franchises, should be laid along said streets, but in lieu of the laying of such tracks where a single or double track had been theretofore laid or should thereafter be lawfully laid by another company on any part of said street, the interurban company was authorized to use the existing tracks of any other company by purchase, lease, or other contract arrangement with such company. *Held,* that the interurban company did not thereby acquire the right to lay tracks where two tracks already existed or might lawfully be laid by any other company under existing franchises, and that a turnout or passing track then existing was a track within such proviso.

6. Whether in any given case, where the facts are undisputed, a city council, acting under sec. 1862, Stats. (1898), has exceeded its power by the enactment of an unreasonable ordinance, is a judicial question, to be considered substantially the same as that of whether the legislature has exceeded its constitutional authority, reasonable doubts being resolved in favor of municipal power.

7. Municipal ordinances must be impartial, fair, general, reason-

able, and lawful. They must not be oppressive or unreasonably prejudicial to private rights and interests.

8. An urban railway company was authorized by ordinance to maintain a single or double track along a certain street, including the crossing of a bridge, and with the consent of the city maintained across such bridge a turnout or passing track connecting with its single main track on the approaches to the bridge. An interurban railway company was also authorized to occupy the same street and was empowered to acquire by condemnation or contract the use of the tracks of the urban company. By contract the urban company had agreed to transport the cars of the other company along its tracks. The city began the construction of a new bridge, and entered into a contract with the urban company to share the expense of laying its tracks on the new bridge. This contract had been executed to the extent of furnishing and fastening rails and locating the tracks. By a decision of this court it was held that the urban company had no right to maintain a double-track railway. Thereupon the city by resolution forbade any switch or connecting track on the new bridge and revoked any consent previously given in any wise conflicting with such resolution. The effect of the resolution was that the urban company was prevented from restoring the connections existing prior to the construction of the new bridge and which were temporarily displaced in consequence of the construction. *Held*, that the resolution was unreasonable and void, as it abrogated the contract previously made by the city respecting the laying of the tracks on the new bridge, confiscated whatever property had been contributed in pursuance of such contract, and deprived the urban company of its rights under the contract with the interurban company and of its right to compensation in any condemnation proceedings instituted by the interurban company to acquire a right to cross the bridge.

9. The question whether such resolution was reasonable or not was a proper one for this court, notwithstanding that the city council decided and the lower court found that any switch or turnout upon the bridge with its diagonals or cross-over tracks on the approaches thereto was undesirable, a hindrance to other modes of travel in the street and over the bridge, and unsafe and dangerous to those using the same with teams or vehicles. Such findings still left open the question whether or not a reasonable exercise of the power of regulation should not have provided for diagonals or cross-over tracks located farther from the approaches instead of prohibiting them altogether.

10. A city council has no power to declare contracts void as against public policy. It is therefore no answer to the claim that the effect of a resolution of such a council was to deprive an urban railway company of its rights under a contract with an interurban railway company to say that such contract was invalid.

11. An unjust, oppressive, or partial exercise by a city of its conceded powers of regulation of street railways is not justified merely upon the plea that the city had determined that the time had arrived when the public interests demanded such action. Such determination is not conclusive, because it goes to the reasonableness of the regulation in question.

12. Although property is devoted to a public use and subject to public regulation it is not thereby *caput lupinum;* and its owner may insist upon his own price therefor, except as against the power of eminent domain, and upon all the advantages of location and of existing contracts, so long as he does not run counter to reasonable and lawful regulations concerning the use of such property.

13. Where an urban railway company had a right as against an interurban railway company to exact such compensation as it could obtain from the latter for the use of its tracks across a bridge, and the latter had a right to resort to condemnation proceedings to acquire such use, a resolution of the city prohibiting the maintenance of a passing track or turnout was unreasonable, under the circumstances shown, irrespective of whether or not such prohibition was to aid the interurban company at the expense of the urban company, and to earn for the city certain stipulated payments from the interurban company.

14. An urban railway company maintained a passing track on a bridge in a city street and resisted an attempt of an interurban railway company to construct a track over this same bridge. The latter company sought to enjoin the former from interfering with such construction. The city denied the right of the urban company to maintain its tracks on the bridge and had forbidden such maintenance. This court found that the action of the city was unreasonable and declared the urban company's ownership of the passing track. There was no proof that the urban company, otherwise than by merely making claims, interfered or attempted to interfere with the interurban company in the laying of its tracks into other portions of the street. *Held* that, as the bill was in no sense *quia timet*, there was a failure of indispensable proof.

15. In a suit between a street railway company, an interurban rail-

way company, and a city involving the rights of such com-
panies in the streets and the power of the city to regulate them,
this court decreed, among other things, that the *status quo*
should be preserved. *Held*, that *status quo* meant the condi-
tions existing at the time of the commencement of the action,
modified or altered only by adjudications or proceedings therein.

16. An ordinance granting a franchise to an interurban railway
company, which provided that such company was authorized
to carry its cars over the tracks of any other company operat-
ing in the city "by purchase, lease, or other contract arrange-
ment with such company," was amended by striking out "by
purchase, lease, or other contract arrangement with such com-
pany," and substituting therefor "subject to the existing rights
of such other company." At the time of the original ordi-
nance and the amendment there existed a traffic arrangement
between the two companies whereby the cars of the interurban
company were being carried over the tracks of the urban com-
pany. *Held*, that the amendment did not materially change
the legal effect of the ordinance as a recognition by the city
and the interurban company that other tracks had theretofore
been laid by the urban company and that the interurban com-
pany took, and that the city gave, the franchise subject to and
with notice of the rights of the urban company.

BASHFORD, J., dissents.

APPEAL from a judgment of the circuit court for Winne-
bago county: CHAS. M. WEBB, Judge. *Reversed.*

A suit by the *Eastern Wisconsin Railway & Light Com-
pany* against the city of *Oshkosh* and the Winnebago Trac-
tion Company to enjoin the latter from laying a second track
on Main street in the city of *Oshkosh* and from interfering
with the *Eastern Wisconsin Railway & Light Company* in
the laying of its tracks in said street, in which there were
answer, cross-complaint, and counterclaim, and a suit by
the city of *Oshkosh* against the *Eastern Wisconsin Railway
& Light Company* and the Winnebago Traction Company to
restrain the latter from violating certain ordinances of the
city in the manner of constructing the east track across the
Main-street bridge, in which there were answers, counter-
claim, and cross-complaint, were consolidated into one action,

but without requiring new or amended pleadings to be filed. There was a suit tried before United States District Judge QUARLES involving some of these same questions, which suit is brought to our attention in the briefs and oral argument.

The judgment appealed from decreed: (1) That the Winnebago Traction Company is entitled to no relief. (2) That the *Eastern Wisconsin Railway & Light Company* has a right to lay a single track in South Main street from Ninth street to the Main-street bridge over and upon Main-street bridge to North Main street, and upon North Main street as far north as a point 135 feet north of the north line of Otter street, together with all necessary poles, wires, cables, and overhead work and other necessary appliances, and to maintain and operate the same in its business in accordance with the franchises, rights, and privileges granted to it by the city of *Oshkosh*. (3) Enjoins the Winnebago Traction Company, its officers, etc., from in any manner interfering with the *Eastern Wisconsin Railway & Light Company* in doing the things aforesaid. (4) Adjudges and decrees that each and every act of the city of *Oshkosh* set forth in the pleadings, or shown to have been done or performed, was lawfully done by said city. . . . That its action in causing the removal of the tracks of the Winnebago Traction Company from the center of the street to the west was and is reasonable, proper, and lawful, etc. (5) Enjoins the Winnebago Traction Company, its officers, etc., from interfering with the city of *Oshkosh* in the exercise of its power so declared, etc., and from attempting to remove its track in North Main street or in South Main street from the present location thereof to the center of the street, and from attempting to build or operate any switch or turnout on Main-street bridge or any cross-over or diagonal track or crossing upon said bridge or the approaches thereof, and from constructing any other or further tracks in said streets without the further permission and consent of the city.

After the entry of the judgment *R. H. Hackett,* receiver of the Winnebago Traction Company, was substituted as defendant in the place of that company; and the appeal was taken by said receiver.

For the appellant there were briefs by *Weed & Hollister,* attorneys, and *Charles Barber,* of counsel, and oral argument by *H. I. Weed* and *Mr. Barber.*

Among other references upon the part of the appellant were the following: That the ordinances granting the franchises constituted contracts: *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, 40 N. W. 487; *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, 69 N. W. 791; *Ashland St. R. Co. v. Ashland,* 78 Wis. 271, 47 N. W. 619; *Stedman v. Berlin,* 97 Wis. 505, 73 N. W. 57; *City R. Co. v. Citizens' St. R. Co.* 166 U. S. 557, 17 Sup. Ct. 653; *Vicksburg W. W. Co. v. Vicksburg,* 185 U. S. 65, 22 Sup. Ct. 585; *New Orleans W. W. Co. v. Rivers,* 115 U. S. 674, 6 Sup. Ct. 273; *New Orleans G. L. Co. v. La. L. Co.* 115 U. S. 650, 6 Sup. Ct. 252; *Africa v. Knoxville,* 70 Fed. 729; *Detroit C. St. R. Co. v. Detroit,* 64 Fed. 628; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 66 N. W. 512; *Allen v. Clausen,* 114 Wis. 244, 90 N. W. 181; *State ex rel. Att'y Gen. v. Portage City W. Co.* 107 Wis. 441, 83 N. W. 697; *State v. Milwaukee G. L. Co.* 29 Wis. 454; *State ex rel. Rose v. Superior Court,* 105 Wis. 651, 81 N. W. 1046; *New Orleans, S. F. & L. R. Co. v. Delamore,* 114 U. S. 501, 5 Sup. Ct. 1009. That the franchises were assignable: *Combes v. Keyes,* 89 Wis. 297, 62 N. W. 89; *Underwood L. Co. v. Pelican B. Co.* 76 Wis. 76, 45 N. W. 18; *Willamette Mfg. Co. v. Bank of B. C.* 119 U. S. 191, 7 Sup. Ct. 187; *State ex rel. Badger I. Co. v. Anderson,* 97 Wis. 114, 72 N. W. 386; *Ohio Cent. R. Co. v. Cent. T. Co.* 133 U. S. 83, 10 Sup. Ct. 235; *Badger T. Co. v. Wolf River T. Co.* 120 Wis. 169, 97 N. W. 907. That the holders of the senior franchise may object to the granting of the junior franchise: *Omaha H. R. Co.*

*v. Cable T. Co.* 30 Fed. 324; *S. C.* 32 Fed. 727. That the rule forbidding impairment of obligation of contracts is to be enforced strictly against the state: *Walla Walla v. Walla Walla W. Co.* 172 U. S. 1, 19 Sup. Ct. 77; *Murray v. Charleston,* 96 U. S. 432; *Ill. Cent. R. Co. v. Adams,* 180 U. S. 28, 21 Sup. Ct. 251; *Greenwood v. Freight Co.* 105 U. S. 13; *New Orleans G. L. Co. v. La. L. Co.* 115 U. S. 650; *St. Tammany W. W. Co. v. New Orleans W. W. Co.* 120 U. S. 64, 7 Sup. Ct. 405; *San Diego L. & T. Co. v. National City,* 174 U. S. 739, 19 Sup. Ct. 804; *Bienville W. S. Co. v. Mobile,* 175 U. S. 109, 20 Sup. Ct. 40; *Los Angeles v. Los Angeles C. W. Co.* 177 U. S. 558, 20 Sup. Ct. 736; *Consolidated W. Co. v. San Diego,* 93 Fed. 849; *Citizens' St. R. Co. v. Memphis,* 53 Fed. 715; *Defiance W. Co. v. Defiance,* 90 Fed. 753; *Mich. Tel. Co. v. Charlotte,* 93 Fed. 11; *Huber v. Martin,* 127 Wis. 412, 105 N. W. 1031, 1135. That the granting of the interurban franchise imposed an additional burden on the street for which the abutting owner was entitled to compensation: *Chicago & N. W. R. Co. v. Milwaukee, R. & K. E. R. Co.* 95 Wis. 561, 70 N. W. 678; *Zehren v. Milwaukee E. R. & L. Co.* 99 Wis. 83, 74 N. W. 538; *Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861; *Lange v. La C. & E. R. Co.* 118 Wis. 558, 95 N. W. 952. That the exercise of police powers must be subject to constitutional rights: *State ex rel. Adams v. Burdge,* 95 Wis. 390, 70 N. W. 347; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 90 N. W. 1098; *State ex rel. Jones v. Froehlich,* 115 Wis. 32, 91 N. W. 115; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 107 N. W. 500; *Union Pac. R. Co. v. C., R. I. & P. R. Co.* 163 U. S. 564, 16 Sup. Ct. 1173; *Chicago, R. I. & P. R. Co. v. Union Pac. R. Co.* 47 Fed. 15; *Chicago, R. I. & P. R. Co. v. D. & R. G. R. Co.* 143 U. S. 596, 12 Sup. Ct. 479; *Joy v. St. Louis,* 138 U. S. 1, 11 Sup. Ct. 243; *Chicago, R. I. & P. R. Co. v. D. & R. G. R. Co.* 46 Fed. 145.

For the respondent *Eastern Wisconsin Railway & Light Company* there was a brief by *Bouck & Hilton* and *John F. Kluwin,* attorneys, and *A. E. Thompson,* of counsel, and oral argument by *Mr. Thompson* and *Mr. Kluwin.*

*W. C. Cowling,* attorney, and *Edward M. Hyzer,* of counsel, for the respondent city of *Oshkosh.*

Among other references upon the part of the respondents were the following: *N. Y. & N. E. R. Co. v. Bristol,* 151 U. S. 556, 14 Sup. Ct. 437; *Jackson Co. H. R. Co. v. Interstate R. T. R. Co.* 24 Fed. 306, 309; *Cleveland El. R. Co. v. Cleveland,* 137 Fed. 111; *Henderson v. Cent. Pass. R. Co.* 21 Fed. 358; *Pearsall v. G. N. R. Co.* 161 U. S. 646, 16 Sup. Ct. 705; *John Pritzlaff H. Co. v. Berghoefer,* 103 Wis. 359, 79 N. W. 564; *Laycock v. Parker,* 103 Wis. 161, 79 N. W. 327; *Marshfield v. Wis. Tel. Co.* 102 Wis. 604, 78 N. W. 735; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118; *Wabash R. Co. v. Defiance,* 167 U. S. 88, 17 Sup. Ct. 748; *W. U. Tel. Co. v. New York,* 38 Fed. 552; *Wis., M. & P. R. Co. v. Jacobson,* 179 U. S. 287, 21 Sup. Ct. 115; *State ex rel. Cream City R. Co. v. Hilbert,* 72 Wis. 184, 39 N. W. 326; *Milwaukee-Northern R. Co. v. Milwaukee L., H. & T. Co.* 132 Wis. 342, 112 N. W. 672; *Thomas v. Railroad Co.* 101 U. S. 71; *Gibbs v. Con. G. Co.* 130 U. S. 396, 9 Sup. Ct. 553; *Central T. Co. v. Pullman's P. C. Co.* 139 U. S. 24, 11 Sup. Ct. 478; *Pa. R. Co. v. St. L., A. & T. H. R. Co.* 118 U. S. 290, 6 Sup. Ct. 1094; *Denver & N. O. R. Co. v. A., T. & S. F. R. Co.* 15 Fed. 650.

The following opinion was filed March 10, 1908:

TIMLIN, J. The pleadings are unnecessarily voluminous, covering 835 printed pages. Proper practice requires that when suits are consolidated the order of consolidation should require the title of the cause and the pleadings to be amended to conform to the order of consolidation. The practice here pursued of retaining all the original and amended pleadings

in each action and presenting them to the court as the pleadings in the consolidated action cannot be approved. The argument took a very wide range, involving the claims on the part of the appellant: (1) that the city had no jurisdiction or authority to pass the resolutions complained of, because such resolutions impaired the obligations of existing contracts; (2) that the acts of the city were in bad faith, ostensibly for the public welfare but really in the interest of the *Eastern Wisconsin Railway & Light Company* in order to get $35,000 agreed to be paid to the city by that company for its franchise or permit to use the streets; (3) that the resolutions as regulations were unreasonable under the circumstances and hence invalid. These claims are denied by the respondents with great learning and ability of argument. It is pointed out by respondents that sec. 13 of the franchise ordinance of the appellant expressly reserved to the common council of the city of *Oshkosh* the right at all times to control the improvement and repair of its streets and every part thereof to the same extent as if no grant of the right to use the same had been given. This ordinance further declared that all switches and turnouts should be laid under the direction of the board of public works of the city, and the city charter vests in the city the authority to establish and alter the grade of streets and to regulate the manner of using the streets and pavements in the city, and to regulate the running of street railway cars, laying down tracks for the same, the transportation of passengers thereon, and the kind of rails to be used. We are also referred to sec. 1862, Stats. (1898), which declares that a street railway shall be subject to such reasonable rules and regulations as the proper municipal authorities may by ordinance, from time to time, prescribe. Considering the foregoing provisions of the charter, statute, and ordinance, and the cases of *Marshfield v. Wis. Tel. Co.* 102 Wis. 604, 78 N. W. 735; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118; *State*

*ex rel. Wis. Tel. Co. v. Janesville St. R. Co.* 87 Wis. 72, 57 N. W. 970; and *Baltimore v. Baltimore T. & G. Co.* 166 U. S. 673, 17 Sup. Ct. 696, we are convinced that the acts and resolutions in question of the city of *Oshkosh* were not *ultra vires;* that is to say, not beyond the power of the city reasonably exercised. We agree with Judge QUARLES that there is no federal question involved.

The respondents further contend that this is a controversy wholly between the city of *Oshkosh* and the Winnebago Traction Company, and that the *Eastern Wisconsin Railway & Light Company* is only incidentally a party thereunto, and that the controversy must be determined as if the city of *Oshkosh* and the Winnebago Traction Company were the sole contending parties, and, further, that the city's acts and resolutions in question were not only within its power, but were a reasonable exercise of its police power of regulation, solely for the public interest and in good faith, and the conclusion of the trial court sustains them in this latter claim. We have given these claims and all other claims made by either party careful attention, and we are convinced that, notwithstanding the extraordinary volume of printing presented, the relevant and controlling facts in this litigation are few, simple, and practically uncontroverted.

Where there is no substantial dispute upon the facts the question before this court is whether upon such undisputed facts the judgment of the court below was right. *Getty v. Schantz,* 101 Wis. 229, 77 N. W. 191. Besides, the appellant excepted to the sixth conclusion of law, "because on the undisputed evidence herein the acts of the city of *Oshkosh* in attempting to deprive the defendant, the Winnebago Traction Company, of its rights and property in and to said bridge, were unreasonable, capricious, partial, were not in the interest of the public, but were and intended to be for the sole benefit of the *Eastern Wisconsin Railway & Light Company.*" The latter is an interurban railway company.

The ordinance under which it claims its right in the case at bar prohibits the doing of a street railway business by it. Sec. 1862, Stats. (1898), relates to street railways. An ordinance granting an interurban railway the right to construct its track and operate in public streets is quite a different thing from an ordinance under sec. 1862, Stats. (1898), *supra*. With reference to an interurban railway the ordinance of the common council merely authorizes the corporation to use the streets with the consent of the city as against the rights of the public, but not as against private owners, leaving such private owners in full possession of their rights to stop the construction, insist on compensation, or give their consent, as they choose. *Lange v. La C. & E. R. Co.* 118 Wis. 558, 95 N. W. 952.

Let us briefly examine the situation as it existed when the city took the first action complained of on the 28th day of November, 1905. At that time the Winnebago Traction Company had succeeded to the rights of the Citizens' Traction Company under the franchise of the latter, which had succeeded to the property of the Oshkosh Street Railway Company by purchase. Instead of taking an assignment of the franchise rights of the Oshkosh Street Railway Company, the Citizens' Traction Company, after its purchase, applied to the common council for a grant of the use of certain streets, including Main street, South Main street, and Main-street bridge. The Oshkosh Street Railway had then, and for a long time prior thereunto, its tracks and turnouts upon this street and upon this bridge. This grant to the Citizens' Traction Company was given by ordinance of November 4, 1897, and specifically authorized necessary switches and turnouts to be laid under the direction of the board of public works. Existing conditions and existing relations cannot be ignored in its interpretation. It also specifically authorized a single or double track along Main street, including the crossing of Main-street bridge. With

the consent and under the permission of the city authorities the Winnebago Traction Company and its predecessor, the Citizens' Traction Company, maintained over and across this bridge a double track, in form a turnout or passing track, connected with their single main track north and south of the bridge upon or near the approaches to the bridge. These tracks upon and across the bridge were the property of the Winnebago Traction Company and were lawfully in place or lawfully entitled to be in place.

At the time in question the ordinance of June 30, 1897, under which the Winnebago Traction Company held this property, contained the following:

"Sec. 10. The city of *Oshkosh*, under the proper exercise of its police power, shall have the right to regulate the operation of said railway as the good order of said city and the safety and comfort of the citizens demand; the said city shall also protect . . . the Citizens' Traction Company in the enjoyment of the rights hereby granted against all invasion or interruption by the passage of proper ordinances for that purpose."

At the time in question the Winnebago Traction Company had a traffic agreement with the predecessor in interest of the *Eastern Wisconsin Railway & Light Company* to which the latter succeeded whereby the Winnebago Traction Company, for a valuable consideration to be paid by the *Eastern Wisconsin Railway & Light Company,* had agreed to transport the cars of the latter along the tracks of the former over the bridge in question, and this agreement was to continue in force during the whole period of the franchise of the Winnebago Traction Company. At the time in question the authority which the *Eastern Wisconsin Railway & Light Company* had by ordinance of the city of *Oshkosh* permitting it to run on Main street in said city required that corporation to pay $35,000 in annual instalments of $1,000 each, and was subject to this proviso in favor of the Winnebago Traction Company, namely:

"Provided, however, that no more than two tracks, including those heretofore laid or existing, or which any other railway company has a right to lay under existing franchise or franchises, shall be laid along said streets, but in lieu of the laying of such tracks where a single or double track has been heretofore laid or shall hereafter be lawfully laid by another company on any part of said street, the said *Eastern Wisconsin Railway & Light Company* is hereby authorized to carry and operate its interurban cars over and along such tracks of any other company by purchase, lease, or other contract arrangement with such company or any other company now owning or using an existing track or tracks along any of said streets."

At the time in question, in consequence of the city of *Oshkosh* having about December, 1904, begun the construction of a new bridge on Main street across Fox river, and manifestly in recognition of the existing rights of the Winnebago Traction Company on said bridge, there was in existence a contract in writing between the city of *Oshkosh* and the Winnebago Traction Company, duly executed under the seal of said city, by the terms of which the city agreed, in accordance with plans and specifications then on file in the office of the city clerk, to lay and fasten upon said new bridge the rails of the Winnebago Traction Company, and the Winnebago Traction Company agreed to furnish all rails for the laying of its double track across said bridge and to pay its proportionate share of the cost of the bridge planking and labor to lay the said planking, and laying and fastening said rails upon said bridge, together with ten per cent. additional as a just and reasonable profit to the city. This contract had been executed at least to the extent of furnishing and fastening rails and locating the tracks. At the time in question the *Eastern Wisconsin Railway & Light Company* had by ch. 266, Laws of 1905 (sec. 1863a, Stats.: Supp. 1906), the power and authority, when reasonably necessary, to take and acquire by condemnation or otherwise the right to run its cars over any bridge owned by any city of the second, third,

and fourth classes . . . and the approaches thereto on the rails of any other street or electric railway which it might meet, join, intersect, or cross. At the time in question there existed a decision of this court, announced fourteen days prior to the adoption of the first resolution in question, holding that the Winnebago Traction Company by building a single track with turnouts or passing tracks had elected under its franchise ordinance to build a single-track railway, and had no right to convert its line thereafter, either wholly or partially, into a double-track road. *Eastern. Wis. R. & L. Co. v. Winnebago T. Co.* 126 Wis. 179, 105 N. W. 571. At the time in question the Winnebago Traction Company was claiming more than it was entitled to, in that it was claiming the right to double track all of Main street as well as the right to maintain its turnout or passing track on Main-street bridge under the ordinance and contracts above mentioned. At the time in question the Winnebago Traction Company had not yet restored the cross-over or connecting tracks between its main track and the passing track on the new bridge. At the time in question the *Eastern Wisconsin Railway & Light Company* had a single track constructed in South Main street up as far as the approach to the bridge in question and parallel with the track of the Winnebago Traction Company, and was claiming the right to run over the bridge, and disputes existed and litigation was pending between the two corporations. We express no opinion with reference to the legality or propriety of the agreement to pay the city $35,000 contained in the ordinance of November 10, 1903, because that question is not necessarily before the court.

We may add here that we do not agree with the construction given by the learned circuit court in its twenty-fourth finding of fact to the proviso contained in sec. 2 of the ordinance of November 10, 1903, under which the *Eastern Wisconsin Railway & Light Company* claims its right to occupy

the streets.  It is there thought that this proviso was wholly in consequence of the claims of the Winnebago Traction Company, and that it granted to the other contending company the right to lay its tracks, provided the Traction Company had not the prior right to lay two tracks in said street. The proviso does not read that way.  The significant words of the proviso are:

"In lieu of the laying of such tracks, where a single or double track has been heretofore laid or shall hereafter be lawfully laid by another company on any part of said street, the said *Eastern Wisconsin Railway & Light Company* is hereby authorized to carry and operate its interurban cars over and along such tracks of any other company,"

subject to the existing rights of such other company.  Tracks then existing, whether single or double tracks, are recognized as lawfully in the streets.  Tracks thereafter laid must be lawfully laid.  A turnout or passing track then existing is as much within this proviso as any other track, because whether we consider that a single-track or a double-track road it had been theretofore laid.

While these conditions existed the common council of the city of *Oshkosh* on November 28, 1905, with a superabundance of preamble and protest which suggests the resolution of the play queen in Hamlet or the sixth rule in *Twine's Case,* resolved that no diagonal switch or connecting track running at an angle or otherwise be permitted to be laid or placed by either the *Eastern Wisconsin Railway & Light Company* or the Winnebago Traction Company upon the new Main-street bridge or upon the approaches thereto until plans and specifications therefor were adopted.  The *Eastern Wisconsin Railway & Light Company* was then making no claim to lay diagonal or connecting tracks on or near the bridge. The effect of this resolution was to prevent the Winnebago Traction Company from restoring the connections connecting its main line with the passing track on the bridge north

or south of the bridge substantially as such connections ex-
isted prior to the construction of the new bridge and which
were displaced temporarily in consequence of such construc-
tion.   This resolution of November 28, 1905, purported to
revoke any permission or consent whether given or claimed
to have been given by ordinance, resolution, motion adopted,
or agreement with either of said railway companies which in
any wise conflicted with this order.   This, of course, was
nominally directed against both companies, but really aimed
at the Winnebago Traction Company.   The resolution fur-
ther directed the city engineer to prepare plans and specifica-
tions for the location of tracks in Main street, and until said
plans and specifications were made and filed neither the
*Eastern Wisconsin Railway & Light Company* nor the Win-
nebago Traction Company should be permitted to do any
work in Main street or to put in place or move the tracks or
any of them.   The city attorney was also directed to compel
the location of the tracks in accordance with the said plan of
the city engineer.   The city engineer in due time produced
his plan, which was adopted and ratified by the common
council and filed with the city clerk, whereupon on Decem-
ber 19, 1905, by resolution No. 4,872, the common council,
after a preamble reciting among other things that both the
*Eastern Wisconsin Railway & Light Company* and the Win-
nebago Traction Company claimed the right to construct
double tracks, switches, or turnouts upon Main-street bridge
and its approaches, and that suits were pending and others
might be commenced in which the city of *Oshkosh* is or
might be made a party, and other recitals, instructed the city
attorney to appear and represent the city in all litigation and
to insist that all street railway tracks be constructed in said
streets according to the resolution of the common council of
November 28, 1905, and according to the plans and specifica-
tions prepared thereunder by the city engineer.   This resolu-
tion contained some argumentative matter, and also deter-
mined that no switch or turnout should be constructed by

either the Winnebago Traction Company or the *Eastern Wisconsin Railway & Light Company* upon Main-street bridge, because the same would be a continuing menace to public safety and convenience and dangerous to the people lawfully traveling upon said street with teams and vehicles. The resolution then required notice to the Winnebago Traction Company to move its tracks in Main street north of the bridge westwardly of the center of the street. In case it failed so to do, required the board of public works to move said tracks; and required the *Eastern Wisconsin Railway & Light Company* to file with the city clerk an agreement upon its part to reimburse the city of *Oshkosh* and hold it harmless from all cost and expense of the relocation of said track.

The Winnebago Traction Company is a street railway. Sec. 1862, Stats. (1898), provides that such railways shall be subject to such *reasonable* rules and regulations as the proper municipal authorities may by ordinance from time to time prescribe. Passing over without comment the fact that the regulations here attempted were not by ordinance, as required by statute, but by resolution, we quote from *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, at page 351 (85 N. W. 1036, 1042):

"It is elementary that the power of the city council to enact ordinances is not unlimited. It may go, within the field delegated to it by the state legislature, to the boundaries of reason. Within such field its discretionary power is supreme, but it cannot legitimately go beyond. If it does, in so far its enactments are void. Whether in any given case where the facts are undisputed a city council has exceeded its power by the enactment of an unreasonable ordinance is purely a judicial question, to be considered substantially the same as that of whether the legislature has exceeded its constitutional authority, reasonable doubts being resolved in favor of municipal power."

Municipal ordinances must not be unreasonably prejudicial to private rights and interests. *Hayes v. Appleton,* 24

Wis. 542. In *Le Feber v. West Allis,* 119 Wis. 608, 97 N. W. 203, an ordinance for municipal lighting granted under a statutory delegation of power much broader than that given by sec. 1862, *supra,* was held void because unreasonable, and a large number of authorities are there cited. So ordinances must be impartial, fair, and general. 1 Dillon, Mun. Corp. (4th ed.) § 322. They must not be oppressive in their character. Id. § 321. And they must be reasonable and lawful. Id. §§ 319, 320.

The question in this case, therefore, is, assuming that the city of *Oshkosh* had power and authority to enact an ordinance in the interests of the public depriving the Winnebago Traction Company of its passing track upon Main-street bridge, or, what is the same thing, prohibiting the connection of said passing track at its ends with the main track, was it a reasonable exercise of such power to enact such an ordinance at the time in question and under the circumstances then existing? It is argued that the common council has decided and the circuit court has found that any switch or turnout upon Main-street bridge with its diagonals or cross-over tracks on the approaches thereto is undesirable, a hindrance to other modes of travel in the street and over the bridge, and unsafe and dangerous to those using the same with teams and vehicles. It is true that such findings were made. But such findings still leave the question open whether or not a reasonable exercise of the power of regulation should not have provided for the diagonals or cross-over tracks at a point in Main street farther north and south of the approaches to the bridge instead of prohibiting them altogether. Only two tracks are permitted upon the new bridge. Two tracks existed upon the old bridge. The new bridge is about ten feet wider than the old bridge. There is a clear space of eight feet and eleven inches from rail to rail between the tracks on the new bridge. Now, consider the result of the acts in question of the common council. One

result was to abrogate the contract made by the city with the Traction Company one year before the passage of these resolutions and to confiscate whatever property had been contributed in pursuance of said contract or whatever payments, if any, had been made therefor by the Traction Company. Another result was to deprive the Traction Company of its rights under the traffic contract with the *Eastern Wisconsin Railway & Light Company,* such as they were. It is no answer to this to say that this traffic contract was of doubtful validity. Both the city and the *Eastern Wisconsin Railway & Light Company* had by ordinance of November 10, 1903, recognized the right of the Winnebago Traction Company to compensation. It is not within the authority of common councils to pronounce contracts void as against public policy. Under the wording of the proviso contained in sec. 2 of the ordinance of November 10, 1903, this bridge was a part of Main street; not for all purposes, but within the meaning of this proviso interpreting the same according to the existing situation and the relations of the parties affected thereby. Another result of the action of the city was to deprive the Winnebago Traction Company of its right to compensation in any condemnation proceeding instituted by the *Eastern Wisconsin Railway & Light Company* for the purpose of acquiring the right to cross this bridge. The decision of this court in *Eastern Wis. R. & L. Co. v. Winnebago T. Co.* 126 Wis. 179, 105 N. W. 571, is far from affirming that the latter company has no right or property in its turnouts, switching and passing tracks.

The decision in *In re Eastern Wis. R. & L. Co.* 127 Wis. 641, 107 N. W. 496, is far from affirming that the traffic contract in question was wholly void, or that rights or claims of right under it could be utterly disregarded by the common council. That case merely holds that such traffic contract is no bar to the exercise of the power of eminent domain by the *Eastern Wisconsin Railway & Light Company.*

The city was interested to the extent of getting $35,000 from the *Eastern Wisconsin Railway & Light Company* and therefore not wholly impartial. The resolutions in question, although ostensibly aimed at both companies, were wholly in the interest of the *Eastern Wisconsin Railway & Light Company* as between the two corporations. There was no new or sudden increase of the population or traffic of the city of *Oshkosh;* no emergency calling for immediate action on the part of the city officials. The only condition shown to have been acute or pressing was the effort of the *Eastern Wisconsin Railway & Light Company* to cross this bridge without compensation to the Winnebago Traction Company in disregard of the traffic agreement and in disregard of the provisions of its permit from the city, which required it to make terms with the Winnebago Traction Company, as we interpret that ordinance. This condition was created by the acts of the public officers of the city of *Oshkosh* and they should not be allowed to stand upon an emergency of their own creation. This effort on the part of the *Eastern Wisconsin Railway & Light Company* was also in disregard of the statute permitting it to obtain the right to run on the tracks of the other company across the bridge by condemnation. At the same time, as we have seen, the resolution of the city council would be quite disastrous to the Winnebago Traction Company, not only by depriving it of this passing track or turnout, but also by depriving it of the opportunity of ascertaining and maintaining such rights as it possessed against the *Eastern Wisconsin Railway & Light Company.* It is no answer to this to say that the city had power, by the enactment of reasonable regulations, to compel the removal of this turnout or passing track from the bridge whenever the public interest demanded such action. Conceding the power, still it must be exercised reasonably and impartially, and an unjust or oppressive or partial exercise of such power cannot be justified merely upon the plea that the city determined

that the time had arrived when the public interests demanded such action. Such determination is not conclusive because it goes to the reasonableness of the regulation in question. Such a regulation might be reasonable at one time or under one set of circumstances, and unreasonable at a time or under circumstances when it made havoc of private interests. It is a somewhat prevalent error that property devoted to public use and subject to public regulation is thereby quite out of law, or, as Blackstone says, *caput lupinum*. The use of such property is subject to regulation and subject to interference by the public authorities with the dominion of the owner to a far greater degree than private property because of its *quasi*-public character and because of the tendency to abuse or extortion in its use and management. But subject to this limitation the owner of such property has the same rights in his property as any other owner. He may insist upon his own price therefor, except as against the power of eminent domain. He may insist upon all the advantages of location and all the advantages of existing contracts so long as he does not run counter to reasonable and lawful regulations concerning the use of such property. So the Winnebago Traction Company had, as against the *Eastern Wisconsin Railway & Light Company,* the right to exact such compensation as it could obtain from the latter for using the east track in question in crossing Main-street bridge. And the latter company has the right to refuse it if it considers the same excessive, and by the law now existing to resort to condemnation proceedings. But the city had no right to intervene in such an exigency and in effect annul and take away such rights of the Traction Company, even if the public interest did require that the passing track or turnout be removed from the bridge, because such exercise of its police power would be unreasonable under the circumstances above shown. Whether or not it was intended by the city to aid the *Eastern Wisconsin Railway & Light Company* at the ex-

pense of the Traction Company and so earn the $35,000 will make no difference if the natural and necessary result of the acts of the city was to aid the one company at the expense of the other. The city must have intended this natural and necessary result of its acts. A reasonable exercise of the power to regulate on the part of the city would at least require its postponement until after the *Eastern Wisconsin Railway & Light Company* had acquired by negotiation or by condemnation the right to use this track on the bridge. We do not feel called upon to impugn the good faith of the city officials, but we do challenge their judgment of what is, under the circumstances, a reasonable exercise of the power of regulation, and hold that the attempted regulations were void as partial and unreasonable.

It follows that the judgment of the circuit court must be reversed, the complaint of the city of *Oshkosh* and that of the *Eastern Wisconsin Railway & Light Company* should be dismissed for want of equity, and that the Winnebago Traction Company should have judgment declaring the resolution of the common council of November 28, 1905, No. 4,867, and that of December 19, 1905, No. 4,872, and the acts done pursuant thereunto, unreasonable and void; but that the requirement that only two tracks be permitted upon the new bridge stand, and that said city and said *Eastern Wisconsin Railway & Light Company,* and each of their officers, agents, and servants, be enjoined and restrained from interfering with the defendant in, or preventing the defendant from, connecting by cross-over tracks at or near the approaches to the bridge its passing track or turnout on Main-street bridge as at present located with its main track as referred to in the contract of December, 1904, until after the *Eastern Wisconsin Railway & Light Company* has acquired by purchase or condemnation the right to use the east track on said bridge. The *Eastern Wisconsin Railway & Light Company* should be enjoined and restrained from attempting

to cross on said bridge before acquiring the right to do so by purchase or condemnation. We do not think that the Winnebago Traction Company is entitled to any other relief demanded, except that the *Eastern Wisconsin Railway & Light Company* should be restrained from interfering or meddling with or running over or upon any other passing track of the Winnebago Traction Company until after it acquires the right to do so by purchase or condemnation. The *status quo* should be preserved, and the Winnebago Traction Company should not change the present location of its tracks in South Main street, nor should it be required to change such present location of any part of its tracks in Main street north of the bridge for the convenience or accommodation of the *Eastern Wisconsin Railway & Light Company* without compensation by that company, the amount thereof to be arrived at by agreement or condemnation proceedings.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.

The following opinion was filed May 8, 1908:

BASHFORD, J. (*dissenting*). The record in this case is so voluminous that the preparation of an opinion involves great labor and careful study to avoid error and misstatements. The labor of preparing a dissenting opinion has been greatly lightened by the very able decision and findings of the trial court, which meet my full approval. While this court in the controlling opinion sustains the authority of the municipality to adopt the resolution here challenged, it condemns the exercise of the power as unreasonable and partial under the facts, which are said to be undisputed. The trial court has found that the city of *Oshkosh* exercised the power which it unquestionably possessed in a lawful and reasonable manner for the regulation of its streets in the interests of

the public, as well as for the advantage of the two rival companies. A restatement of the facts may aid in a correct understanding of the situation confronting the municipality, and may tend to vindicate the justice and reasonableness of its action. The city of *Oshkosh* will hereinafter be referred to as the "City," the Winnebago Traction Company as the "Traction Company," and the *Eastern Wisconsin Railway & Light Company* as the "Interurban Company." An attempt will be made to state the facts which are deemed to be material in their chronological order. The organization of the two railway companies and the rights claimed by them upon the streets in the city of *Oshkosh* are stated in the opinion.

In February, 1902, the Interurban Company entered into a contract with the Traction Company, which is referred to as the traffic agreement, whereby the tracks of the two companies were to be connected, and the Interurban Company was to run its cars in the city of *Oshkosh* over the tracks of the Traction Company upon the terms and conditions therein stated. It does not appear that the city had official knowledge of this traffic agreement, and it never gave its consent thereto in any manner. It stands admitted that the Traction Company had no authority to operate an interurban road upon its street-car tracks, or to authorize the use of its street-car line for that purpose by another company. The city was not a party to the traffic agreement, and its power over its streets was in no way affected thereby. The city, by an ordinance approved November 10, 1903, granted a franchise to the Interurban Company to maintain a single or double track for an electric interurban street railroad in the streets of *Oshkosh* therein mentioned, which included South Main street to the Fox river, over and along Main-street bridge, and on North Main street to High street. This was the most direct and feasible route for that company to enter the city, and was the only one ever selected, and was the

most convenient in all respects for public travel. There was a provision in the ordinance that not more than two tracks should be placed upon said streets, including those thereto-fore laid, or which any other company had a right to lay un-der any existing franchise; but in lieu of laying such tracks the Interurban Company was authorized to operate its cars over and along such tracks of any other company, "subject to the existing rights of such other company." At this time the Traction Company claimed the right to maintain double tracks upon Main street and across the bridge. Prior to the adoption of this ordinance, neither the Traction Com-pany nor the Interurban Company had any right to operate an interurban railway or to carry interurban cars over or upon any of the streets or bridges of the city of *Oshkosh*.

The common council, by an ordinance passed in Novem-ber, 1903, and which has since continued in force, prohibited the passing of cars upon any of the bridges in the city of *Oshkosh*. This was before any controversy had arisen be-tween the two companies as to their right to lay tracks upon Main-street bridge. At the time the franchise was granted to the Interurban Company the Traction Company had a single track in Main street, with a switch or turnout com-mencing upon the incline at the Main-street bridge on the south and ending upon the incline of the bridge approaching the north, but which had never been used as a passing place for cars. It was the contention of the Traction Company at that time that it had the right to maintain a double track on Main street and across the bridge, and this doubtless prompted the proviso in the franchise granted to the Interur-ban Company with respect to using the tracks of any other company. After the franchise was granted to the Interur-ban Company it located its line of railway upon South Main street to the bridge crossing Fox river, thence over the Main-street bridge, and north on Main street to High street, the terminus of the interurban road running between *Oshkosh*

and Neenah. The court has found that the route so selected was the most direct and feasible and the one most advantageous to the public, and that it is essential to the success of the interurban railway. The road has been constructed and operated as far north as Main street ever since May, 1906, the construction thereof having been made at large expense under the ordinance of November, 1903.

In 1904 the city determined to replace the Main-street bridge with an entirely new structure, and in December the old bridge was removed, together with all tracks thereon. The Traction Company was then insisting upon its right to maintain a double track on Main street and two tracks across Main-street bridge as part of a double-track system. The interurban Company claimed the right to maintain one track across the bridge, and, as there could be but two tracks, a contest arose between them, which was determined by this court by a decision announced November 14, 1905, and reported in 126 Wis. 179, 105 N. W. 571. The court there held that the Traction Company did not have the right to maintain double tracks in Main street, but did not decide upon the right to a turnout or switch upon the bridge, as the so-called passing track was there denominated. At about the time the old bridge was removed a memorandum agreement was signed December 15, 1904, by the Traction Company and by the mayor, clerk, and comptroller of the city, whereby the city was to lay the planking upon the bridge in process of construction and to lay and fasten upon said bridge the rails of the Traction Company, the latter "to furnish all rails for the laying of its double track across said bridge at its own cost and expense." The Traction Company was to pay its proportionate share of the planking and of the laying of the rails, and ten per cent. in addition thereto. It is to be here noted that it does not appear that the contract contains any provision or suggestion that the tracks are to be used as turnout or passing tracks. It will be remembered that the ordi-

nance of 1903 was then in force, prohibiting the use of pass-
ing tracks upon any of the bridges in the city. Part of the
rails had been furnished by the Traction Company and laid
upon a portion of the new bridge when the decision of this
court was announced November 14, 1905, holding that the
Traction Company had no right to maintain double tracks
upon Main street.

The common council thereupon adopted the resolution, ap-
proved November 28, 1905, which gave rise to this litigation,
and which this court holds to be unreasonable and void. The
preamble refers to the decision of this court with respect to
the rights of the Traction Company to lay an additional track
upon the streets of the city, the claim of the Interurban Com-
pany that it has a right under its franchise to lay its track
upon South Main street, and that such tracks had been there
laid to the east of the tracks of the Traction Company, and its
purpose to extend its track north on Main street, across the
bridge, to High street; to the safety and convenience of public
travel, which required the removal of the tracks of the Trac-
tion Company on Main street north of the bridge from the
center to the west side thereof, and that the tracks of the Trac-
tion Company be placed on the east side of said street; to the
public safety, which demanded that the railway tracks on
Main-street bridge and the approaches thereto should run as
near as practicable to a straight line parallel thereto, and that
no connection with said track be made by diagonal switch
upon said bridge or approaches; and to the power of the city
to regulate the use and occupation of its streets and bridges.
Thereupon it was resolved that no diagonal switch or connect-
ing track running at an angle or otherwise be permitted to be
placed either by the Interurban Company or the Traction
Company upon the bridge or its approaches until plans and
specifications therefor had been adopted, and directing the
city engineer to prepare such plans and specifications. It
further directed the city attorney to take such action as to him

should seem proper to prevent either of said companies from so laying its tracks upon the bridge or its approaches. This suit is the result of the adoption of the resolution.

The undisputed evidence demonstrates that the Traction Company was at this time asserting its right under its franchise to lay a switch or turnout track upon the bridge and its approaches, and that the Interurban Company was asserting its right under its franchise to lay its track upon the bridge and its approaches, and that the city asserted its authority to control the occupation of its own streets and to regulate the laying of the tracks upon the bridge and the approaches for the use and convenience of both companies and for the accommodation and protection of public travel. The power of the city to adopt the resolution cannot be questioned. The situation, it seems to me, required that this power should be promptly exercised, and that the action taken was just and reasonable and such as the circumstances demanded.

The city, in the franchise ordinance, under which the Traction Company here asserts its claim to the additional track upon the bridge, expressly reserves to itself the power to control at all times the improvement and repair of the streets to the same extent as if no grant of the right to use them had been given. The statute also provides that a street railway shall be subject to such reasonable rules and regulations as the proper municipal authorities may from time to time prescribe. Sec. 1862, Stats. (1898). The grant to the Traction Company was not an exclusive franchise to occupy Main street or the bridge for railway purposes, and it cannot be construed as limiting the power of the city to permit another company to lay its tracks thereon, and if necessary to require the Traction Company to remove its tracks to one side, provided it be furnished a suitable and convenient location. This court holds that the regulations prescribed by the city, which are here challenged, are within the power possessed by the municipality, if reasonably exercised, but determines, contrary

to the finding of the trial court, that the resolution adopted by the common council is void as partial and unreasonable. The reasons assigned for the last conclusion seem to me wholly untenable.

The court condemns the proposed regulations because of the supposed effect they may have upon the relations existing between the two railway companies. It is said in the opinion:

"One result was to abrogate the contract made by the city with the Traction Company one year before the passage of these resolutions, and to confiscate whatever property had been contributed in pursuance of said contract, or whatever payments, if any, had been made therefor by the Traction Company."

The undisputed evidence showed that no such result can follow. After the adoption of the resolution of November 28, 1905, here in question, the attorneys for the Traction Company addressed a communication to the common council, dated December 16, 1905, containing a stipulation for the speedy completion of the bridge, which was accepted on behalf of the city. In order to hasten the completion of the Main-street bridge and give the public the immediate benefit of its use, the Traction Company proposed that the city should lay the rails on the east side of the bridge in the manner specified. The rails were to be so laid that neither company could make use of the track until the right thereto should be determined by the court. The Traction Company was to furnish the rails and to be reimbursed on the conditions stated. The east track was to remain in the possession of the city until title thereto should be adjudicated. If it should be determined that the Traction Company was not entitled to maintain and operate said east track, it agreed to convey the rails so laid to the city, or to whomsoever it should direct, upon the payment to the Traction Company of the actual cost of the rails, with five per cent. added. This stipulation continues in

force and fully protects the rights of the Traction Company to the property which it had contributed and the money which it had expended in connection with the track on the east side of the bridge. The track on the west side remained in its possession. The stipulation so readily entered into shows beyond question that it was not the purpose of the city, in adopting the resolution of November 28th, to appropriate to itself the rails and other material furnished by the Traction Company toward the construction of the bridge, or that either party contemplated any such result.

In this connection it may be well to state that on December 14, 1905, the common council adopted what is known as the "Randall plan" for laying the tracks of both companies on Main street, which obviated the necessity of any switch or turnout track for the use of either company upon the bridge or its approaches. This plan contemplated an interchange of tracks between the two companies, giving the west track to the Traction Company and the east track to the Interurban Company, the Traction Company to come in from the south on the east track and go out on the west track, and the Interurban Company to come in from the south on the east track and go out on the west track. There was provided a double cross-over track near High street, north of the bridge, so as to fully accommodate the running of the cars of both companies. There was, therefore, no confiscation of the property of the Traction Company under the contract of December 15, 1904, as provision had been made for reimbursement under the agreement above mentioned.

This court, it seems to me, has given too much importance to the contract entered into between the city and the Traction Company on December 15, 1904. It does not seem to have been expressly authorized by the common council, nor does it in form or in fact grant a franchise to the Traction Company or enlarge the terms of any franchise theretofore granted. The Traction Company was then asserting a legal

right to construct a double-track railway system upon Main street across the bridge. The city could not determine the legal question involved, and it did not attempt to. It was engaged in the construction of the new bridge, and deemed it advisable to lay the track as part of the bridge, permitting the Traction Company to furnish the rails and to pay part of the cost. The Traction Company agreed "to furnish all rails for the laying of its *double track* across said bridge," and not for a switch, turnout, or passing track. The situation was changed by the decision of this court, a year later, that the Traction Company had no right to maintain a double track in Main street and across the bridge, and the city then had the right to take such action with respect to the matter as it deemed for the public interest, making proper compensation for any property that might have been furnished for its use on the bridge. The ordinance adopted in November, 1903, prohibited cars from passing on this bridge; hence the city by the contract of December, 1904, could not have intended the construction of a passing track by the Traction Company upon the bridge or its approaches. It is apparent that a contract providing for the cost of laying the rails on the new bridge in no way contemplated or recognized any claim by the Traction Company to operate a switch or turnout or passing track upon the bridge, to be connected at each end thereof with the single-track system for the purpose of allowing cars to pass on the bridge while going in different directions. The right to maintain the additional track for such purpose was not asserted by the Traction Company until its right to maintain a double track had been denied by this court, and the claim was then promptly repudiated by the city, which refused to construct a passing track upon the bridge under the contract relating to the construction of double tracks upon the bridge. It did construct one track upon the west side of the bridge for the use of the Traction Company, and constructed the east track on the bridge under the subsequent agreement

above referred to, and then made provision for its use by both companies, which furnished them proper facilities and the traveling public the necessary accommodations. The adoption of the resolution of November, 1905, did not, therefore, deprive the Traction Company of any property or of any property right which was not subject to compensation by the city or by the Interurban Company, and which, if denied, might not be enforced by proper legal proceedings.

With respect to the adoption of the resolution of December, 1905, it is said in the opinion: "Another result was to deprive the Traction Company of its rights under the traffic contract with the *Eastern Wisconsin Railway & Light Company*, such as they were." The city had never been informed officially of the existence of any such contract, it was not a party to it, and it never recognized it in any manner as having any controlling power over its own action in the regulation of its streets. It is said in the opinion: "Both the city and the *Eastern Wisconsin Railway & Light Company* had by ordinance of November 10, 1903, recognized the right of the Winnebago Traction Company to compensation." It is respectfully submitted that the ordinance, as passed by the common council and as accepted by the company, contains no such recognition on the part of the city. That ordinance grants a franchise to the Interurban Company to lay single or double tracks and operate its road upon the streets of the city therein named for a strictly interurban business, the company to hold the city harmless from any damages of whatever kind or nature resulting to property owners by reason of the construction or operation of its railway. The proviso has already been referred to which prohibits the laying of more than two tracks upon the streets, including those theretofore laid, or which any other company has a right to lay under existing franchises, and authorizes the company to operate its cars over the tracks of any other company, "subject to the existing rights of such other company." The Interurban.

Company could not operate its cars over the tracks of the Traction Company without the permission of the city, nor could the Traction Company operate cars over its own tracks without such permission. The city could not grant to the Interurban Company the right to use the tracks of the other company without the consent of the latter, and the clause quoted was doubtless inserted as a matter of precaution, and to ingraft what the court would supply in case of any controversy upon the subject. The language can be nothing more than the recognition of a legal condition—the statement of a conclusion of law with respect to the rights of the parties. The Traction Company was not a party to this grant, and its rights were in no way affected thereby; hence the proviso cannot be fairly construed as a recognition of any right to compensation which would limit the power of the city to control its own streets in the interest of the public. The reasonableness of the resolution cannot be tested by simply referring to the permissive grant of this franchise, whether it recognizes the right to compensation or not, or by affirming that the regulation was in fact detrimental to one and beneficial to the other company. The power of the city cannot be thus limited or the reasonableness of the act thus summarily determined. Moreover, if the traffic agreement is valid, it may be enforced in any proper proceeding brought for that purpose. The trial court has found that the Interurban Company is solvent, and it has given a sufficient bond to insure its part of the agreement. The action of the city has not and could not prevent the enforcement of any legal rights which one company then had or now has against the other under any existing contract. It seems to me dangerous to hold that the municipality can be restricted in the exercise of its police powers and in the control of its own streets by an independent agreement entered into by third parties without its knowledge or consent.

The court states as a further result of the adoption of the resolution that the Traction Company was deprived of its

right to compensation in any condemnation proceeding insti-
tuted by the Interurban Company for the purpose of acquir-
ing the right to cross the bridge.   No such consequence could
follow the action of the city unless the Traction Company has
acquired a vested right to occupy the east side of the bridge
with its turnout track.   But the court concedes that the city
has the power to adopt the resolution in question, and hence
it may order the removal of the track whenever necessary for
public convenience and safety.   Such removal might be or-
dered at any time, and might now be held reasonable by this
court but for the fact that the Interurban Company thereby
derived some benefit.   What compensation would the Trac-
tion Company be entitled to recover for the loss of a turnout
track held by such uncertain tenure?   Moreover, the Interur-
ban Company may never commence condemnation proceed-
ings; if so, nothing more than nominal damages might be
awarded.   Can the reasonableness of municipal regulation
of the streets be made to depend upon circumstances so remote
and speculative when important public interests are involved?
The resolution does not take away any vested right of the
Traction Company and has not deprived it of the use of the
east track upon the bridge, which has been placed there at the
expense of the city for the accommodation of both railways.
As already shown, the Randall plan adopted by the city fur-
nishes adequate facilities for the use by both companies of the
tracks upon the bridge in connection with their tracks upon
both sides thereof, and the public is provided with better ac-
commodations and with adequate protection from dangerous
obstructions.

The consideration controlling the decision of the court is
the supposed injury inflicted upon the Traction Company
and the possible advantage derived by the Interurban Com-
pany by the adoption of the resolution in question.   It is said
in the opinion:

"But the city had no right to intervene in such an exigency and in effect annul and take away such rights of the Traction Company, even if the public interest did require that the passing track or turnout be removed from the bridge, because such exercise of its police power would be unreasonable under the circumstances above shown."

The situation might, as I think it did in this case, demand the immediate exercise by the municipality of its control over the street and bridge. Nevertheless it must postpone action until rival companies asserting adverse claims to occupy the locality with their tracks have settled their differences amicably or in the courts; otherwise its action is subject to condemnation as unreasonable and partial. The reasonableness of the regulation is made to depend upon the effect it may have upon the disputed rights of third parties as between themselves, and not upon the safety and convenience of the public. Every police regulation necessarily affects persons subject thereto, abridging the rights of some, possibly enlarging the privileges of others; but the reasonableness of the exercise of the power cannot be determined upon any such indirect consequences. The exercise of such power in the public interests cannot, as a matter of law, be denounced as unreasonable because it naturally and necessarily affects existing conditions, and operates to the injury of one and to the advantage of another person. This court does not impugn the good faith of the city authorities in adopting the resolution, but it assumes to challenge their judgment in the attempted exercise of the power of regulation. The judgment of a legislative body, based upon a knowledge of existing conditions which no judicial tribunal can be presumed to possess, has not generally been considered the subject of review by the courts.

"The honest judgment of the municipal authorities as to what is promotive of the public welfare must ordinarily control, although not in accord with the views of the court." *Le Feber v. West Allis*, 119 Wis. 608, 613, 97 N. W. 203.

*Tilly v. Mitchell & L. Co.* 121 Wis. 1, 98 N. W. 969, has, it seems to me, controlling weight in the determination of the question here under consideration. While the court there holds that the reasonableness of a municipal regulation may be judicially reviewed, it points out that such review involves the question of power to pass the act, and not an inquiry into its expediency, justice, or propriety. It is there said:

"The claim is and was that the ordinance of vacation was passed solely for the private benefit of the defendant corporation, and that the public good in no way demanded it, and hence that it was illegal and void. So the question really is whether in this action the validity of the ordinance can be challenged on the ground that the council acted from a wrong motive. Corruption is not claimed, fraud is not claimed, and want of power is not claimed; but the simple claim is that the members of the council, in exercising their legislative powers, acted from improper motives and subordinated the public interest to the private interests of the defendant corporation. The general principle that legislative acts, within the power of the legislative body to pass, are not subject to revision or control by the courts on the ground of inexpediency, injustice, or impropriety, is well settled, and has nowhere been stated with greater vigor than by this court. . . . In both of the cases quoted from, acts of the legislature were under consideration; but the same general principle has been frequently recognized as applicable to the acts of the common council which are legislative in their character, as is the ordinance under consideration."

And further:

"The sole claim is that the council have vacated a part of a street for a private use when it was needed by the public. This means that the motives of the councilmen were wrong and their judgment unsound. We think the courts will not entertain an inquiry into the truth of these charges. The ordinance was within their power to pass. On its face it purports to be passed for a purely public purpose. Such a purpose is entirely possible, notwithstanding a private benefit may at the same time inure to the defendant. Even though the council may have been wrong in its judgment, or

may have mistaken a private interest for a public one, our conclusion is that the courts cannot arrest the operation of the ordinance for these reasons."

The result of the decision of the court is to deprive the city of *Oshkosh* of the authority delegated to it by the legislature to regulate and control the use of its streets in the interests of the public, and to confer that power in a limited though in a very important degree upon the Traction Company, to be exercised by it for its own private interest and advantage. The municipality should determine upon what terms and conditions an interurban company should occupy its streets for interurban traffic; but this right which is to be exercised for the public benefit is taken away by the grant of a franchise, which is not in terms exclusive, to a street railway company, which has thereby acquired the right to maintain a turnout track upon the bridge at the main entrance of the city, and impose such terms as it deems fit for its private advantage as a condition for the admission of interurban traffic. The claim so asserted on behalf of the appellant ought not to receive the solemn sanction of this court.

I respectfully but emphatically dissent from the doctrine that the power of the municipality to control its own streets in the interest of the public can be subverted by an independent agreement between third parties entered into without its knowledge or consent, or by the grant of a franchise to a street railway company which is not in terms exclusive as to a particular location therein specified, or by a contract entered into on its behalf with such company, unless authorized by the common council and approved in the manner prescribed by law for the adoption of a franchise ordinance.

The following opinion was filed May 8, 1908:

TIMLIN, J. Respondents move for a rehearing, finding error and obscurity in the former opinion, which to the ap-

pellant appears "clear, comprehensive, and decisive." So do our interests affect our judgments. No new question affecting the merits is presented by the motion; but the earnestness, ability, and industry of respondents' counsel deserve some attention beyond the mere formal denial of the motion. Perhaps counsel have not made sufficient allowance for the brevity, essential in judicial opinions, which constrains us to condense into about a dozen pages that which they have presented to us in 865 pages of briefs. It is said we should not have dismissed the complaint or complaints of the respondents. The complaint of the railway company was dismissed for want of equity principally upon the following grounds: (1) After finding in favor of the appellant upon the invalidity of the resolutions and regulations and declaring appellant's ownership of the passing track on the bridge, there was neither finding nor proof left sufficient to show that the appellant, otherwise than by merely making claims, interfered or attempted to interfere with the building in other portions of the street of the roadway of this respondent. This constituted a failure of indispensable proof, because the bill is in no sense *quia timet*. (2) We are unwilling at present, and without further argument and authority, to affirm that the interurban railway can purchase from the city for a cash consideration the consent of the city, or the passage of an ordinance authorizing the laying of its tracks in the streets. The former opinion, reported in 126 Wis. 179, 105 N. W. 571, and adhered to, was given upon the showing there made that the appellant was wrongfully interfering with and obstructing the construction of respondent's railway, and we believed this conduct could not be justified by reason of any irregularities or imperfections, if any there are, in the ordinance mentioned. The complaint of the city was dismissed for want of equity, because we consider the complaint as ancillary to the complaint of the Interurban Company, because we reject the view that the city was impartially trying to protect itself against

both corporations, and because the gravamen of that complaint
is to enforce conformity to resolutions and regulations held
unreasonable and void, and because there is, aside from such
resolutions and regulations, nothing in the findings or proof
to sustain an injunction such as prayed for by the city. The
usual consequences of such dismissal will follow.

The *status quo* means, of course, the conditions existing at
the time of the commencement of this action, modified or al-
tered only by adjudications or proceedings in this action.
The declaration that the *status quo* should be maintained has
particular reference to forbidding any further attempted in-
tervention by the city by way of resolution or ordinance
pending the determination of this controversy, forbids chang-
ing back to their former position in the middle of the streets
the tracks of the Traction Company, does not continue in ex-
istence or prevent the termination of the so-called *modus vi-
vendi* agreement, nor prevent the Traction Company from
connecting its passing track at the north and south ends
thereof with its main track by cross-over connections, nor
prevent the Traction Company from disconnecting the pass-
ing track in question from the tracks of the Interurban Com-
pany at the north and south ends of the passing track, nor
prevent the Traction Company from forbidding and prevent-
ing the *Eastern Wisconsin Railway & Light Company* from
using the track of the Traction Company without compensa-
tion to be fixed by agreement or condemnation. These rights
will be preserved to the Traction Company by the decree.
We do not determine whether or not the Traction Company
is entitled to compensation for the cost or disadvantage of re-
moving its tracks under the removal heretofore made, be-
cause that question is not before us. With reference to this
recovery it cannot be had in this cause, and the Traction
Company may proceed as it shall be advised. We express no
opinion. As we understand the situation, the tracks have
been removed from the middle of the street either by the city

authorities or pursuant to an order of the city authorities, it matters not which. This is a fact accomplished. It therefore remains accomplished. We understand that the *Eastern Wisconsin Railway & Light Company* cannot reach its tracks north of the bridge without passing over the bridge on the track of the Winnebago Traction Company, and the decree herein will continue this restraint until the former acquires the right to reach those tracks in the manner pointed out.

The pleadings of the respondents in this case showed sec. 2 of the ordinance of November 10, 1903, as quoted in the opinion heretofore written. The case as printed failed to show any amendment allowed; but, as shown by the written record, an amendment was duly allowed to these pleadings, showing that that section of the ordinance was amended by striking out the concluding words, "by purchase, lease, or other contract arrangement with such company, or any other company now owning or using an existing track or tracks along any of said streets," and inserting in lieu thereof, "subject to the existing rights of such other company." We do not think this amendment materially changed the legal effect of the ordinance as a recognition on the part of the city and on the part of the *Eastern Wisconsin Railway & Light Company* that other tracks had been theretofore laid by the Traction Company, and that the *Eastern Wisconsin Railway & Light Company* took, and that the city gave, the franchise or permit subject to and with notice of the rights of the Traction Company. When we consider that the traffic agreement between these corporations existed at the time that sec. 2 of the ordinance as it originally existed was enacted, and that the cars of the *Eastern Wisconsin Railway & Light Company* were then being carried over the tracks of the Traction Company openly and notoriously, and that this amendment was made at the instance of the *Eastern Wisconsin Railway & Light Company,* there seems to be no escape from the conclusion that the latter was then planning to repudiate its traf-

fic contract, or else that the words "subject to the existing rights of such other company" meant subject to the existing right of the Traction Company to charge a compensation to the respondent for the use of its track. It is proper to note the fact of this amendment for its bearing on possible future litigation, but it in no wise tends to change the conclusion that this court has formerly arrived at.

We think this covers all the points upon which counsel for the respondents found the first opinion ambiguous or obscure. With reference to the motion for rehearing on the merits, we have given the matter careful consideration and we have found nothing to shake our confidence in the correctness of the opinion heretofore announced.

*By the Court.*—The motion for rehearing is denied, with $25 costs.