CITY OF MADISON, Respondent, vs. SOUTHERN WISCONSIN RAILWAY COMPANY, Appellant.

*January 15—March 17, 1914.*

*Statutes: Repeal: Municipal corporations: Ordinances: Construction: Street railways: Franchises: Duty to keep portions of streets in "proper repair:" Paving and repaving: New franchise omitting specific requirement of prior one: Additional requirements: "Regulation" of streets: Powers of council.*

1. In general, a statute covering the subject matter of a former enactment repeals it.
2. Whether an entire statute was impliedly repealed by a later one covering, in general, the same subject, is a matter of legislative intention.
3. Repeals by implication are not favored and, so, an earlier enactment is not deemed repealed by a later one, unless the two cannot reasonably consist with each other.
4. Where a revision of an earlier law expressly repeals all prior acts and parts of acts inconsistent therewith, a purpose appears to retain such parts of the former as are not clearly repugnant to the latter.
5. The last rule restricts the first but does not save a substantial characteristic of the earlier enactment, omitted from the later one; the earlier enactment, thus characterized, and the later one, not so featured, are, in general, to be regarded as inconsistent and the former as falling under the fourth rule.
6. A statute obviously intended to supersede an earlier enactment, so supersedes, without any express repeal, thus annulling any particular provision of the later not incorporated into the former.

7. The stated rules for statutory construction are general, in respect to the situation to which they respectively apply; but are subservient to the supreme rule that the purpose of the legislature should be vitalized by judicial construction when it can be discovered from the whole enactment, by itself, or in connection with others or any circumstances characterizing it,— the intention being regarded as matter of fact, determinable by evidentiary rules and circumstances.

8. In case of a city ordinance being ambiguous, in that, read literally, or from some permissible viewpoint, the legislative body evinced gross carelessness in conserving the public interests, it is to be presumed there was no such purpose, and that should prevail if, by any reasonable construction, a cast can be given to the enactment consistent with due care.

9. In case of a superseding street railway ordinance which is complete in itself, but omitting features of the former ordinance which characterized it as a whole or containing new features, giving significant cast thereto, with a repealing clause as in rule 4, the words, "all acts" should, ordinarily, be regarded as not limited by the words "parts of acts."

10. In general, in case of a public utility franchise being reasonably susceptible of two meanings, giving rise to uncertainty as to which was intended, the language used should be construed favorably to the public interests.

11. In case of a superseding street railway franchise, granted by a common council, containing a condition burdening the grantee to keep the railway zone "in proper repair" and "in proper order and cleanliness" in the words of the original franchise, but omitting a particular condition of the latter, common to such franchises, burdening the grantee with the duty to pave and repave, as needed, the street within the railway zone; but framed so as, in the whole, to clearly evidence a purpose to burden the grantee with responsibility for the proper condition of the railway zone, the words "proper repair" and "proper order" should be given the broad meaning of including paving and repaving, where "proper repair" and "proper order" would reasonably call therefor in the judgment of the governing body of the grantor.

12. A franchise duty imposed on a street railway company to keep its railway zone in "proper order," is a continuing obligation, including duty to conform the character of the railway zone to the physical condition of the street outside thereof, as such condition, in the judgment of the governing body of the grantor, may from time to time be changed to accommodate the needs of the people.

13. A legal principle having been developed and declared, in general,

it applies to all situations within its scope, and is not limited to the particular situation suggesting it. The rule for the future is a part of the unwritten law which rests in principles; not merely in cases referred to for illustration.

14. The omission from a street railway franchise of a specific requirement of the old grant requiring the grantee to pave and repave the railway zone, as needed in the judgment of the grantor, but retaining the former requirement to keep the railway zone in "proper repair" and "proper order" and adding a new feature expressly making the grant "subject to such reasonable rules and regulations respecting the streets and highways as such council may from time to time enact," should be regarded as clearly intending to burden the grantee with the duty of keeping the railway zone in such condition as the grantor may reasonably require, changing the physical condition, from time to time, to that end.

15. A street railway company franchise granted upon the conditions mentioned, emphasizing the duty of the grantee under sec. 1862 of the Statutes, should be construed in the light of *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, as reserving to the grantor authority to make regulations, from time to time, as regards paving and repaving the railway zone.

16. The term "regulation" as used in respect to the police power, is very comprehensive, extending to requirements as to creation of physical conditions and of preserving the same and of creating other conditions from time to time.

17. The term "reasonable rules and regulations" of "the highway as the council may from time to time enact," when used in a street railway franchise and as used, in effect, in the statute, sec. 1862, should be construed with regard to the broad comprehensive meaning of the term "regulation," the length of such a grant, the probable necessity for changes, from time to time, in the structural character of streets, the importance of absence of divided responsibility for the physical condition of the railway zone, and all other characterizing circumstances.

18. A municipality, with the broad powers of regulation as regards streets, may make reasonable regulations, burdening a public utility using the street with the duty to make, at its own expense, reasonable changes in the physical condition of the zone so used, irrespective of anything contained in the public utility franchise, and this broad power, it is under disability to contract away.

[Syllabus by MARSHALL, J.]

BARNES, J., dissents.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action to recover of defendant the cost of paving that portion of a street between its railway tracks and one foot outside the rails.

The question was whether defendant's franchise required it to bear the expense of the pavement in the particular region. From the time of its organization up to 1892, defendant operated under a franchise containing the following provision:

"Section 3. Whenever any street upon which any of said tracks may be located shall hereafter be paved or macadamized, the said railway company shall pave or macadamize the roadbed between and one foot on either side on the outside of the rails of the track of their said road, and shall at all times make and keep the track between and one foot on either side on the outside of the rails thereof equally as good as the streets shall be outside of their tracks, and shall correspond in surface and improvements with said street outside of said track."

That franchise was in existence when the paving in question was done, unless repealed by a franchise granted defendant in 1892 under which it was operating when such work was done. The new franchise was complete, in itself, being so framed as to cover all features of street railway construction, maintenance, and operation. It was granted to authorize displacement of the old horse-car system by a modern electric system, and contained this repealing language:

"All ordinances or portions thereof heretofore adopted which conflict with the provisions of this ordinance are hereby repealed."

The new franchise, in general, was worded the same as the old one with such changes as would make it adaptable to the use of electricity as a motive power. It differed in suf-

ficient respects to be, as a whole, in conflict with the old franchise, though by far the greater part was substantially a reenactment of the existing ordinance. The provision before quoted from the old franchise with reference to paving between the tracks was not carried into the new one. The language of the old franchise preceding the particular clause, and the language following, were substantially reproduced in the new one leaving the particular clause wholly absent from the latter. The remaining language which, without material difference, is common to both franchises, is as follows:

"(b) It shall be the duty of said company to repair any and all damages done to the streets, macadamized curbs, cross or sidewalks, gutters or other public or private property by the construction or repairing of the tracks along the streets as herein provided for; and further to protect and save harmless the city of *Madison* against all claims for damages arising from the construction, operation or management of the railway provided for herein."

In 1910 the common council of plaintiff, by due proceedings, determined to pave University avenue between Charter street and Park street with asphalt on a concrete foundation, and by ordinance passed June 10, 1910, ordered the defendant to likewise pave that portion of the street between its tracks and for one foot outside its rails. Defendant denied liability in that regard. Whereupon it was agreed that plaintiff should incur the expense of paving the entire street and then test its claim against the defendant by an action to recover the reasonable value of the work done within the railway zone. Such proceedings were duly had pursuant thereto that judgment was recovered against defendant for $4,567.64.

The pleadings and evidence show the facts stated. These additional matters are covered by the findings: The right of defendant to use the streets of plaintiff is referable to the franchise of 1892 requiring it to "keep the space between the rails of each track and for the space of one foot on the outside in proper repair so as not to interfere with travel

over the same." Prior to the paving in question the particular street had not been permanently improved. Portions thereof had been covered with crushed stone and defendant had likewise filled that part occupied by its tracks. The use of the street was such, prior to the paving in question being ordered, as to render the existing macadam unsuitable. Prior to July 11, 1910, the street within the railway zone was so out of repair as to render it unfitted for use by traveling across the tracks. A macadam made of crushed stone is not a proper pavement for the particular street under the circumstances existing. In case of the railway zone being so paved the surface would wear down between the tracks so that travel across the same would cause injury to the pavement outside such zone by disintegration of the unsuitable macadam pavement and parts thereof being deposited on the asphalt surface.

The provision of the franchise particularly referred to in the findings is a re-enactment of the old ordinance. It is in these words:

"(a) And said company shall keep the space between the rails of each track and for the space of one foot on the outside in proper repair so as not to interfere with travel over the same, and shall keep the same in proper order and cleanliness at its own cost and expense."

The later ordinance contained a new provision making the granted privilege conditioned in that it should be "subject to all general provisions of statute law now in force and applicable thereto and to such reasonable rules and regulations respecting such streets and highways and operation of cars as the said council may from time to time enact."

On the facts found as indicated judgment was rendered in favor of plaintiff.

For the appellant there was a brief by *Jones & Schubring,* and oral argument by *E. J. B. Schubring.* To the point that a provision in a street railway franchise requiring the rail-

way company to repair the space between the rails and one foot on the outside thereof "so as not to interfere with travel over the same" does not obligate the company to pave or re-pave the streets, they cited 3 Dillon, Mun. Corp. (5th ed.) § 1276; *Chicago v. Sheldon,* 9 Wall. 50; *State ex rel. Kansas City v. Corrigan C. St. R. Co.* 85 Mo. 263, 55 Am. St. Rep. 361; *Kansas City v. Corrigan,* 86 Mo. 67; *Williamsport v. Williamsport P. R. Co.* 206 Pa. St. 65, 55 Atl. 51; *Western P. & S. Co. v. Citizens' St. R. Co.* 128 Ind. 525, 26 N. E. 188, 28 N. E. 88; *Philadelphia v. H., M. & F. P. R. Co.* 177 Pa. St. 371, 35 Atl. 718.

*William Ryan,* for the respondent, in support of the claim that the obligation in the 1892 franchise includes the paving of the railway zone, cited *Brooklyn v. Brooklyn City R. Co.* 47 N. Y. 475, 7 Am. Rep. 469; *Binghamton v. Binghamton & P. D. R. Co.* 61 Hun, 479, 16 N. Y. Supp. 225; *Conway v. Rochester,* 157 N. Y. 33, 51 N. E. 395; *People ex rel. Russell v. Utica,* 45 App. Div. 356, 61 N. Y. Supp. 31; *Mechanicsville v. Stillwater & M. St. R. Co.* 35 Misc. 513, 71 N. Y. Supp. 1102, affirmed 67 App. Div. 628, 74 N. Y. Supp. 1149, reaffirmed 174 N. Y. 507, 66 N. E. 1117; *Binninger v. New York,* 177 N. Y. 199, 69 N. E. 390; *Rochester v. Rochester R. Co.* 182 N. Y. 99, 74 N. E. 953; *New York v. H. B., M. & F. R. Co.* 186 N. Y. 304, 78 N. E. 1072; *Schuster v. Forty-second St., M. & St. N. A. R. Co.* 118 App. Div. 197, 102 N. Y. Supp. 1054; *New York v. New York City R. Co.* 60 Misc. 487, 113 N. Y. Supp. 869, affirmed 132 App. Div. 156, 116 N. Y. Supp. 939; *New York v. Broadway & S. A. R. Co.* 130 App. Div. 834, 115 N. Y. Supp. 872; *New York v. Ninth Ave. R. Co.* 130 App. Div. 839, 115 N. Y. Supp. 876; *New York v. Metropolitan St. R. Co.* 130 App. Div. 842, 115 N. Y. Supp. 878; *Harrisburg v. Harrisburg P. R. Co.* 1 Pears. 298; *Ridge Ave. P. R. Co. v. Philadelphia,* 124 Pa. St. 219, 16 Atl. 741; *Philadelphia v. Ridge*

Madison v. Southern Wis. R. Co. 156 Wis. 352.

*Ave. P. R. Co.* 143 Pa. St. 444, 22 Atl. 965; *McKeesport v. McKeesport P. R. Co.* 158 Pa. St. 447, 27 Atl. 1006; *Philadelphia v. Thirteenth & F. Sts. P. R. Co.* 169 Pa. St. 269, 33 Atl. 126; *Reading v. United T. Co.* 202 Pa. St. 571, 52 Atl. 106; *Reading v. Reading & S. W. St. R. Co.* 215 Pa. St. 132, 64 Atl. 335; *Reading v. United T. Co.* 215 Pa. St. 250, 64 Atl. 446; *Columbus St. R. & L. Co. v. Columbus,* 43 Ind. App. 265, 86 N. E. 83; *State ex rel. New Orleans v. New Orleans & C. R. Co.* 52 La. Ann. 1570, 28 South. 111; *Danville v. Danville R. & E. Co.* 114 Va. 382, 76 S. E. 913; 27 Am. & Eng. Ency. of Law (2d ed.) 41; 36 Cyc. 1403–1405; Elliott, Roads & S. (3d ed.) §§ 985–989.

MARSHALL, J.   The following rules are guides for determining whether an act of legislation repeals an earlier act relating, in whole or in part, to the subject covered by the later one:

1. In general, a statute covering the subject matter of a former statute repeals it.   *Lewis v. Stout,* 22 Wis. 24; *State v. Campbell,* 44 Wis. 529.

2. Whether an entire statute was-impliedly repealed by a later one covering, in general, the same subject matter, is a question of legislative intention.   *Gilkey v. Cook,* 60 Wis. 133, 18 N. W. 639.

3. Repeals by implication are not favored and that has such force that an earlier act is not to be regarded as repealed by a later one unless the two are so manifestly and materially in conflict that the two cannot, reasonably, stand together. *Att'y Gen. ex rel. Taylor v. Brown,* 1 Wis. 513; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *Milwaukee Co. v. Halsey,* 149 Wis. 82, 136 N. W. 139; *State ex rel. Hayden v. Arnold,* 151 Wis. 19, 138 N. W. 78.

4. Where an act revises an earlier law and expressly repeals "all acts or parts of acts inconsistent with it" a legis-

lative purpose is manifest to retain such parts of the former act as are not clearly repugnant to the later one. *Lewis v. Stout,* 22 Wis. 24.

5. The rule last stated, as to an act revising the subject matter of· an earlier law and containing an express repeal of all acts and parts of acts inconsistent therewith, is restrictive of the rule that a revising act without a repealing clause repeals the act revised; but does not apply so as to save a substantive part characterizing the earlier act but omitted from the later one. The earlier statute so characterized and the later one omitting the particular feature are inconsistent and the former falls under the general repeal of "all acts and parts of acts inconsistent with and conflicting with the provisions" of the later act. *Smith v. Eau Claire,* 78 Wis. 457, 47 N. W.· 830.

6. A subsequent statute, evidently intended as a substitute for one revised, operates as a repeal·of the latter without any express words to that effect and, so, any distinct provision of the old law, not incorporated into the later one is to be deemed to have been intentionally annulled. Smith, Stat. & Const. Law, § 784; *Bartlet v. King,* 12 Mass. 537.

7. The numerous rules for statutory construction on the subject of repeal of an earlier by a later statute, are general, in respect to the particular situation to which they respectively apply; but are subject to the ultimate purpose of giving effect to the legislative intent, when from the whole body of an act, or by a comparison of the enactment with others, or other circumstances characterizing the new enactment, it is clear that a repeal was not intended and the real purpose can be carried out by aid of judicial construction.

It is manifest from the foregoing, that it is not always easy to determine whether a provision in an earlier law, not carried into a later one, covering in general, the subject of the former, is preserved, repealed, or annulled. Possibly no more striking instance of that can be pointed to than the re-

peal, in part, of the common law respecting perpetuities in personal property by incorporating the common into written law as to realty and omitting it as to personalty; as announced in *Dodge v. Williams,* 46 Wis. 70, 96, 1 N. W. 92, 50 N. W. 1103, became a matter of uncertainty nevertheless which continued for years, and was only substantially set at rest in *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345, and not so as to cease to be a subject of discussion until *Danforth v. Oshkosh,* 119 Wis. 262, 97 N. W. 258.

What is the legislative intention characterizing any particular enactment is largely a matter of fact to be determined from evidentiary rules and circumstances. That the ordinance in question was a general revision of the subject matter of the earlier ordinance and would fall as an entirety, including the provision relating to paving, under the first rule, if it were not for the repealing clause and in the absence of some manifest intent from legitimate evidentiary circumstances to the contrary, does not admit of any serious doubt. Again, that the particular clause requiring the owner of the franchise to bear the expense of paving in the railway zone was left undisturbed by the second rule,—aimed at the prevention of live repugnant provisions,—if the new act, as a whole, or the particular part of it as regards the duties of the owner of the franchise respecting the railway zone,—is repugnant to or inconsistent with the former act or provision thereof on the subject, unless there be a manifest intent to the contrary from legitimate evidentiary indications, is likewise plain. Again, if the particular provision of the old charter was such a substantial ground of liability as to characterize the franchise as a whole, so that leaving it out of the new one renders the old, with such provision, inconsistent with the new without it, then such particular provision must be considered as having been annulled under the sixth rule; unless it is manifest that the legislative purpose was not to treat any mere feature of the old charter, however import-

ant, as so characterizing the whole that the one with it could be deemed inconsistent, in the entirety, to the one without it, so as to fall under the language of the repeal,—"All ordinances . . . heretofore adopted which conflict with the provisions of this ordinance are hereby repealed."

Thus it is seen that, in a rather complicated situation like the one before us, to solve the controversy by reference to one general rule, closing our eyes to others, might be supported by very plausible logic and yet be very far from being true to the legislative purpose.

It might be said that, whereas there was a provision in the old ordinance requiring the owner of the franchise to pave the street area within the railway zone and there is none in the new one, there are no conflicting provisions on the subject, and so the one in the old ordinance is preserved by the plain repealing words of the clause,—that every part of the new ordinance can be given full effect and the particular provision, dealing with a subject omitted, be left undisturbed. But there stands the quite obvious circumstance that the city council intended to cover, by the last ordinance, all the relations between the city and the grantees of the franchise.

True, the specified repeal of portions of any existing ordinance inconsistent with the new one, in one view, is pregnant with the idea of there being portions of such existing ordinance to be repealed and portions to be preserved, but, when the subject is viewed, comprehensively, it is quite evident that the term "ordinances or portions thereof," coupling the two features together, was adopted without any definite idea of that kind; but rather in conformity to the ordinary way of closing a new enactment, designed to take the place of all prior laws on the subject. There would be no doubt but that, had the term "portions" not been used, the entire old ordinance would, plainly, stand repealed, both under the first rule mentioned and the sixth as well. It is difficult to read a contrary intent out of the new ordinance, since it

seems quite plain that there were no "portions" of ordinances to be repealed, except such as were parts of the old entirety. Had it been intended to repeal part of such entirety and preserve part, it seems the common council would have more clearly repelled the idea,—which was liable to otherwise exist from the apparent purpose of the ordinance to make a complete arrangement with the owner of the franchise,—by providing that all portions of ordinances conflicting with the new one should stand displaced by the new one, and not referred to existing ordinances as entireties at all. In that is seen a pretty strong ground for the belief that the words "or portions" were not used to cut down the scope of the words "all ordinances" but were used, either in a perfunctory way, or as matter of caution lest there should be something existing between the city and the owner of the old franchise not fully covered by the term "all ordinances."

The latter view is strengthened by this: The clause of the old franchise under consideration was so important to the city that in an attempt to regrant the franchise, it could not be regarded as otherwise than gross carelessness to leave out such clause, unless the common council purposed to nullify it, or supposed the same obligation, especially as to existing paved streets, was covered by other portions of the franchise. Courts, ordinarily, deal with too much consideration for members of a legislative body to ground a decision on a theory of their having been grossly careless, where such a result can reasonably be avoided. In situations somewhat similar to the one we have before us, courts have said that rather than impute to members of a lawmaking body gross carelessness or mistake, it should be presumed there was an intent to eliminate that particular provision from the law. *Goodenow v. Buttrick,* 7 Mass. 140; *Ellis v. Paige,* 1 Pick. 43.

So if the term "or portions" in the repealing clause was given the cast of rather adding to than modifying the words "all ordinances," the particular clause in question would fall

as part of the entirety under the fourth rule mentioned and it would fall, in any event, under the fifth rule. The clause created a specific duty and liability, as in *Smith v. Eau Claire,* 78 Wis. 457, 47 N. W. 830; therefore it was such a substantial part of the old ordinance and so characterized it that the new one, omitting it, was inconsistent therewith. In the cited case, there was substantially the same situation as we have here and it was held that the particular clause was displaced as a substantial part of the law of which it formed a part.

It follows that, principle and evidentiary circumstances concur in persuading us so strongly as to produce a conviction to a reasonable certainty that the intention in granting the franchise of 1892 was to make a complete charter, defining the rights, privileges, and liabilities of the grantee as regards the city and displacing the old charter, in its entirety, with the special requirement as to paving in the railway zone.

There is no need of referring to other particulars than that already mentioned in which the new franchise departed from the old one in order to provide proper authorization for an entirely new street railway system. Suffice it to say, such new franchise, notwithstanding many points of similarity, was a recast of the old one with so many variations on so many particulars that, as a whole, there was sufficient conflict between the two to form a mark for the language of the repealing clause directed at all ordinances. Moreover, as before suggested, as the old franchise was the only one within the call of such repealing clause, it must have been within the contemplation of the common council of the respondent as the one repealed.

The result of the foregoing is that, at the time appellant was ordered by the city ordinance of June 10, 1910, to do the paving in question, there was no express requirement in its franchise on the subject. So if there was any authority to

impose such a burden it must be found in some duty, independently of written law, or read out of the general spirit of the franchise by construction, or the particular clause in respect to "proper repair," or found in the particular conditions upon which the rights of the grantee were made dependable. We will refer briefly to these features.

The new franchise, in the very nature of things, conferred upon the grantee a more extensive use of the street than the old one. That was necessary to the new system. The street was substantially surrendered to the grantee within the railway zone. True, the public right to use the street was reserved as before, but only subservient to the reasonable exercise of the new and greater right. The nature of the service contemplated by the new franchise and the physical construction to afford such service required the grantee to possess pretty broad powers as to the railway zone. It was clothed with all authority necessary to make the connections for the electric service, including a ground or metallic return for the electric current, and it could only do that and have proper capacity to keep its line and give good service, by being afforded the exclusive authority to do whatever was necessary in that regard and there being no divided duties as to physical acts in respect to the conditions of the railway zone. The technical nature of the construction, required or permitted, and of the work of exercising proper care always to have the railway system in good repair and working order, was inconsistent with the performance of work, in general, by respondent's employees within such zone which would interfere with its physical condition. Full authority in these respects was conferred, upon appellant, in letter and spirit as well, coupled with an express condition, not found in the old ordinance, making the grant *"subject to all general provisions of statute law now in force and applicable thereto, and to such reasonable rules and regulations respecting such streets and high-*

*ways and operation of cars as the said council may from
time to time enact."* There was also preserved in the new
ordinance the provision of the old one in these words:

"The roadbed shall at all times correspond with the actual
grade of the street and shall be so laid and maintained that
carriages and other vehicles can easily and freely cross said
track at any and all points. . . . And said company shall
keep the space between the rails of each track and for the
space of one foot on the outside in proper repair so as not to
interfere with travel over the same, . . ."

Counsel for respondent suggest that the decision of this
court in *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.*
151 Wis. 520, 139 N. W. 396, in principle, rules this case in
its favor. Much, if not all, there said as to the matter of con-
struction applies here. It is there suggested that, in grant-
ing such franchises, the common council acts as the trusted
agency of the people in conferring a valuable privilege, it
gives a large measure of private right whereby a paramount
privilege to use a portion of the street is surrendered, and the
municipal authorities are in a great measure, displaced from
exercising that control necessary to keep the ways in a proper
condition for public travel, and it is the grantor's duty to ex-
ercise a high degree of care in performing its trust and, so, it
must be presumed, in construing any doubtful franchise pro-
vision that the common council endeavored to execute such
duty and all provisions of any franchise susceptible of being
used as conflicting, should be read as favorably as reasonable
in favor of the public. Significance was given to the long
franchise period,—thirty-seven years,—and the idea given
prominence that the council, acting with the degree of care
which it must be assumed it exercised, doubtless contem-
plated many changes in the character of the pavement would
be required during such period and endeavored to protect the
public in respect thereto.

Here the grant was for a still longer period than in the *Milwaukee Case.* It was for a street railway system in the capital city of the state and conferred at a time when existing pavements were liable very soon to become entirely unsuitable for such a city and be required to be replaced by new ones of permanent and modern character.

Therefore, considering the common manner of conserving public interests under the same or similar circumstances, if the council intended to eliminate the special provision of the old charter, and neither incorporated a substitute therefor into the new one nor prescribed any condition therein empowering the council to deal with the matters to which the old provision referred as occasions therefor might arise, it would seem to have grossly failed to perform its duty. The ordinance should have such construction as will avoid that result if that can reasonably be done.

Aided by logic as above, the court in the *Milwaukee Case* had no difficulty in rejecting the idea which under other circumstances found place in *Blount v. Janesville,* 31 Wis. 648,—that repairing cannot be considered as including paving or repaving. So it must be considered that the ruling thought of numerous decisions which may be found, some of which are cited to our attention, that an ordinance requirement of a street-car company to keep its railway zone in "a good" or a "proper" "state of repair," does not, under any circumstances, include paving or repaving, has been rejected here and the one adopted supported by much, and, as said in the cited case, the better authority, that where the proper conditions of a street, under all the circumstances, require paving or repaving, the requirement to repair may be phrased in such a way as to cover the matter. The court adopted, as a principle for guidance in this state, the doctrine deduced by Judge Elliott in his work on Roads & Streets, vol. 2 (3d ed.), at secs. 987, 988, from many authorities on the subject, after

giving due consideration, as was thought, to those conflicting therewith, which may be epitomized thus: Where the franchise granted to build, maintain, and operate a street-car system contains an express requirement to repair, it continues with the life of the grant, creating a duty of such performance as will make that portion of the tract to which it relates conform to the changes outside thereof, made from time to time under the direction of the municipality in order to render the way suitable for public use, and such performance includes, in making repairs after repaving by the municipality with the same material as before, and repaving by substitution of a different material to conform to this changed condition as well.

Now why does not that rule with the supporting authorities referred to, go to the full extent of including the circumstances of this case, as counsel for respondent claim? It certainly effectually excludes from our consideration the inconsistent theory, mainly relied on by counsel for appellant and supported by very respectable authority, that a requirement to repair does not include construction, or reconstruction of a pavement. The facts of the case, as found by the trial court, fall very clearly within that rule.

Here there was the express requirement to repair, emphasized by the word "proper;" and we must not overlook the significance of that word. There was, in the beginning, a pavement which could not have been reasonably expected to be other than temporary, then came the time of need, in order to put the street in a proper state of repair, to remove the old worn out pavement and put one in its place which would be suitable to the changed conditions. The common council acted within its power in providing for such pavement, and then ordered defendant to conform thereto.

True, in the *Milwaukee Case,* the principle was not carried so far as would be necessary for the purposes of this case, because the franchise there expressly required the railway com-

pany, in making repairs from time to time, to use the "same material as the city shall have last used to pave or repair, . . . previous to such repairs," in the absence of an agreement to use some other material. But when the court, upon due consideration, lays down a principle as controlling within a particular field and then applies it to a concrete situation in hand, it is not limited, as to the future, by the scope of that particular situation. If that were so, we would have a system of mere case law and no light dependable for the solution of problems as they arise, except that radiating from precedents. We have no such system, in fact, there is so much of habit to ground current decisions on what has been held as to the same or similar situations, by some court, or courts, somewhere, and on what particular justices have said, discoursing on matters before them in approaching and grounding a finality, that by laymen, quite commonly, and by some professional men and even courts, precedents are supposed to be the sole and dependable guides, whereas they are, generally, merely object lessons illustrative of the application of principles. So we must regard the doctrine, unqualifiedly adopted in the *Milwaukee Case,* to have been incorporated in the unwritten law of this state and test this case thereby, not by the mere facts of the former.

The scope of the principle adopted, as indicated, needs no extensive discussion. It was stated in unmistakable language by the chief justice in that case. It was supported by much authority, elementary and judicial. It is in harmony with the conditions of modern life. It is a natural development therefrom in the progressive spirit which does and should expand the zone of duty so as to meet, efficiently, the needs of changed conditions. It is in that way that the unwritten law, made up of principles rather than of mere precedents, does not and cannot, properly, stand still. It is a thing of growth and in that growth,—supplementing and reading out of the written law what it speaks in the light of the circumstances of

its origin,—progressive conditions giving rise to new duties or to the increase of old ones, are so dealt with as to conserve the public welfare.

The full scope of the rule announced in the *Milwaukee Case* may be best appreciated by reference to the illustration there given by quoting with approval from *Mayor, etc. v. H. B., M. & F. R. Co.* 186 N. Y. 304, 78 N. E. 1072, this language:

"The question of what shall constitute keeping a pavement in the tracks of a railroad company in good order and repair is to be determined somewhat at least with reference to existing and surrounding conditions, and in our judgment it would be altogether too narrow a view to hold that where a municipality had for sufficient reason decided to pave a street with asphalt or other new pavement a railroad might discharge its obligations to keep its part of the street in good order and repair by merely patching up a dirt road or some species of pavement which had become antiquated and out of condition and which was entirely different from that adopted in the remainder of the street."

The New York court before had and since has applied that principle to situations similar to the one in hand, and likewise the courts of Indiana, Florida, and other states. The doctrine has taken on such dignity as to be recognized and adopted in standard elementary works, as indicated by the citations in the *Milwaukee Case* which need not be recited here nor added to. The principle itself having become firmly established and the logic of it being well grounded, it would be sufficient to merely state it as to any situation falling within it.

Before leaving the subject above discussed it might be well to recognize the fact, as contended in the brief of respondent's counsel, that the principle adopted by this court in the *Milwaukee Case* comes far short of the one adopted in some jurisdictions. There it is held that, because of the practical surrender of the street within the railway zone to the use of the

street railway company, and the practical difficulties of divided responsibility for the physical condition of such zone, the common-law and statutory duty of the municipality as to such conditions passes with the franchise, subject to responsibility of the municipality to the public for performance; that it is obligatory on the holder of the franchise to comply with all reasonable regulations of the grantor in respect to paving and repaving of the streets and keeping them in a proper state of repair within the railway zone, without any conditions in the charter in that regard. *Reading v. United T. Co.* 202 Pa. St. 571, 52 Atl. 106; *Reading v. United T. Co.* 215 Pa. St. 250, 64 Atl. 446.

In the first case cited the court after reviewing its own decisions remarked:

"When, looking beyond the decisions referred to, we search for principles to guide us to a conclusion, we find first of all that it is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect."

In a later decision there is evidence that the court was not disposed to adhere to the broad rule announced, but in a still later decision the doctrine announced in the earlier case was reaffirmed:

"In that case, in affirming the judgment below, we adopted, as correctly expressive of our views, the words of the present learned trial judge, that 'It is recognized, with substantial unanimity, that a railway company, whether general or passenger, is bound to keep the portions of streets occupied by its right of way in good condition, even in the absence of any express contract or statutory direction to that effect.'" *Reading v. United T. Co.* 215 Pa. St. 250, 255, 64 Atl. 446.

We do not need to go that far at this time and, without expressing any disapproval thereof, but rather confessing a feel-

ing of force from the logic, we will rest the subject with the principle established in the *Milwaukee Case*.

Here we have a franchise with a provision as before indicated well within such principle. It requires the grantee thereof, at all times, to keep its railway zone in "proper repair so as not to interfere with travel over the same and keep the same in proper order and cleanliness at its own expense," language quite similar to that dealt with in *Conway v. Rochester*, 157 N. Y. 33, 51 N. E. 395; *Mechanicsville v. Stillwater & M. St. R. Co.* 174 N. Y. 507, 66 N. E. 1117; *Binninger v. New York*, 177 N. Y. 199, 69 N. E. 390; *Mayor, etc. v. H. B., M. & F. R. Co.* 186 N. Y. 304, 78 N. E. 1072, as for illustration: "The said grantees or their successors shall keep the surface of the street inside the rails and for one foot outside thereof in good and proper order and repair and conform the tracks to the grades of the streets or avenues as they now are or may hereafter be changed by the corporation." Here the franchise contains a quite similar provision as regards conforming the level of the railway zone to the grade of the streets and preserving such conformity. It was held that, in view of the object of such a requirement, it imposed a duty to comply with all reasonable regulations of the municipality as regards changing the character of the surface within the railway zone so as to harmonize with the rest of the street, and to the extent of putting down a new and better pavement whenever in the judgment of the municipality the public welfare required it. The great principle there declared is that, in the granting of such long franchises as the one in question, it must be presumed that a mutual intention existed that the grantee should not operate so as to obstruct the efforts of the authorities, in their wisdom, to maintain the streets up to any reasonable standard required in order to keep abreast of the times and afford the public the use of ways, in harmony with progressive demands growing out of increase of population, increase of use, and improve-

ments demonstrated by experience to be reasonably required to make such ways adaptable to changed conditions. That is what this court, in effect, said in the *Milwaukee Case* and it is now reaffirmed. The facts found by the trial court, as indicated in the statement, as to the necessity for substitution of a new pavement for the old one in order to put the street in a proper condition of repair, make a very clear case for the application of such principle.

If the foregoing discussion were not decisive of what the result should be here, there is another phase of the matter which the majority are of the opinion rules the case in favor of the respondent. I am firmly convinced, after a most careful study of the subject, that there is little or no room for logical escape from that conclusion and that it has more of an unanswerable basis to rest upon, if there be room for degrees in the matter, than the one that paving and repaving is included within the obligation of appellant to "keep the space between the rails of each track and for the space of one foot outside in proper repair," etc. I say this without intending to cast any doubt upon the soundness of the latter ground for the decision here to rest upon. I am well satisfied with it upon principle and authority, though I recognize, as was done in *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396, that the contrary view has much and distinguished support. *Kansas City v. Corrigan,* 86 Mo. 67; *Chicago v. Sheldon,* 9 Wall. 50; *Norristown v. Norristown P. R. Co.* 9 Pa. Co. Ct. Rep. 98; *Norristown v. Citizens' P. R. Co.* 9 Pa. Co. Ct. Rep. 102; *Norristown v. Norristown P. R. Co.* 148 Pa. St. 87, 23 Atl. 1060; Booth, Street Railways (2d ed.) § 243. The subject being one on which there is so much conflict of authority, and the case in hand having some circumstances which might be claimed to require an extension of the principle upon which the decision in the *Milwaukee Case* was grounded, it has seemed to me that if there are other circumstances, affording a firm and entirely

independent basis for a decision, the court ought not to pass it by.

The second ground for affirmance to which I have alluded, though after due consideration approved by the majority of the members of the court as sound, may not be as unqualifiedly indorsed as I assert its conclusiveness, so the high degree of satisfaction with it which I express may be, as the manner of supporting it will indicate, somewhat personal.

I may say, in passing, that the Chief Justice does not desire to express any opinion on the point I am about to discuss, while Justice BARNES is in favor of a reversal. In that situation, especially, in view of the conflict of authority on the first point, it has seemed to me not only proper, but a duty, to support such an important decision as the one we have reached by all the sound bases which are apparent. My brethren who concur with me on the second point agree as to the propriety of supporting the decision thereby, if they do not go so far as to share in my view as to the duty to do so.

The new ordinance, as before indicated, was granted upon the express condition of its being "subject to all general provisions of statute law now in force and applicable thereto and to such reasonable rules and *regulations respecting such streets and highways . . . as the said council may from time to time enact.*" That is very comprehensive. It must be viewed, in the light of what has been said, as having been made a condition of the grant for the purpose, in the words of the opinion in the *Milwaukee Case,* of serving and conserving public advantages which are valuable and substantial rather than trifling and inconsiderate. "All the intendments must logically be favorable rather than adverse to the public." Language which is "equally capable of two constructions, that construction which would safeguard the public interests, substantially, must be given preference to that construction which secures only insufficient or unsubstantial advantages to the public."

In short, any uncertainty of meaning in such a case must be resolved in a manner most favorable to the public, if such manner would be within the realms of reason, under all circumstances.

The term "rules and regulations respecting the streets and highways" does not mean merely "rules and regulations" as regards operation of cars, because "rules and regulations" in that regard are mentioned, conjunctively, in connection with *"rules and regulations"* respecting *"such streets and highways."* It seems that the latter must be construed to include "rules and regulations" regarding the physical condition of the railway zone. It may well have been thought that such a provision, broadly considered, would impose a much more comprehensive duty upon the railway company than the one regarding paving, as provided in the old franchise,—that the broader provision would better conserve the public interests than the old one.

In view of the duty of the common council to carefully and vigilantly guard public rights, it seems quite likely that the new provision was added for the purpose suggested. It harmonizes with the provision respecting "proper repair," with the general idea as to the duty of a railway company in respect to that part of the street within the railway zone and the importance of there not being divided responsibility as to operations which might otherwise interfere with its physical conditions.

The term "regulation" has often been said to be one of very broad import. Power in that regard extends to requiring changes in physical condition as well as manner of use. No court has taken a broader view in that than this court. *Chicago, M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118; *Eastern Wis. R. & L. Co. v. Hackett,* 135 Wis. 464, 474, 115 N. W. 376, 1136, 1139; *Chicago, M. & St. P. R. Co. v. Fair Oaks,* 140 Wis. 334, 122 N. W. 810. It includes the power to widen, alter, and extend streets so as to provide

for the public convenience.    *U. S. v. Harris,* 1 Sumn. 21, 26
Fed. Cas. 185, 193.    Also to granting the use of part of a
street, and the exclusive use, under some circumstances; *St.
Louis v. Western Union T. Co.* 149 U. S. 465, 13 Sup. Ct. 990,
and to authorizing or requiring physical changes.    *McWethy
v. Aurora E. L. & P. Co.* 202 Ill. 218, 67 N. E. 9; *State v.
Murphy,* 134 Mo. 548, 31 S. W. 784, 34 S. W. 51, 35 S. W.
1132.    The power to regulate is so broad that it includes power
to prohibit under some circumstances.    *Att'y Gen. v. Boston,*
142 Mass. 200, 7 N. E. 722.    The term being thus broad,
does it not include power to prescribe a condition of use such
as to repave ?    In *Fielders v. North Jersey St. R. Co.* 68 N. J.
Law, 343, 53 Atl. 404, 54 Atl. 822, the question was whether
the general police authority of a city to regulate the use of its
streets included power to require a street railway company to
repave within the zone of its tracks in case of that being
necessary.    The nine members of the court, by one majority,
decided in the negative, the affirmative being maintained in a
very vigorous dissenting opinion.    As I read the opinions I
cannot doubt that if the court had been dealing with an ex-
press condition, in this case, having the appearance of being a
substitute for one in a previous franchise on the subject of
paving, the decision would have been unanimous in favor of
the idea here maintained.

"To regulate is to govern by, or subject to, certain rules
or restrictions.    It implies a power of restriction and re-
straint, not only as to the manner of conducting a specified
business, but also as to the erection in or upon which the busi-
ness is to be conducted."    *Rochester v. West,* 164 N. Y. 510,
58 N. E. 673.    The principle thus applied is familiar.    It is
this: In case of a municipal power of regulation, either of a
general nature over a particular subject or of a particular na-
ture, as here, where it is a condition of the grant and the
power exists for the conservation of public safety, convenience,

and welfare, any ordinance under it which is reasonable and in compliance with its purpose, is lawful.

Many more illustrations of the comprehensive meaning of the word "regulate" in situations somewhat similar to that in hand might be mentioned. Probably no better illustration could be given than to point to the history of the subject found in the many decisions of the federal courts on the power of regulation of interstate commerce. They have gone so far that it is very difficult to suggest limitations and the decisions are so familiar that citations seem unnecessary. As to the general scope, *St. Louis v. Western Union T. Co.* 149 U. S. 465, 13 Sup. Ct. 990, is sufficient. The court there said of the word "regulate," it "is one of broad import. It is the word used in the federal constitution to define the power of Congress over foreign and interstate commerce, and he who reads the many opinions of this court will perceive how broad and comprehensive it has been held to be. If the city gives a right to the use of the streets" as in the ordinance "it simply regulates the use when it prescribes the terms and conditions upon which they shall be used." That has been many times referred to in the federal and other courts and significantly in *Baltimore v. Baltimore T. & G. Co.* 166 U. S. 673, 17 Sup. Ct. 696, where the court added:

"This power of regulation is a continuing power; it is not exhausted by being once exercised, and so long as the subject is plainly one of regulation, the power may be exercised as often as and whenever the common council may think proper; the use of the street may be subjected to one condition today and to another and additional one tomorrow, provided the power is exercised in good faith and the condition imposed is appropriate as a reasonable regulation, and is not imposed arbitrarily or capriciously."

It is interesting to observe how the ordinary meaning of the term under consideration has been broadened in judicial

conception by the manner of its use.   In *Owensboro v. Cumberland T. & T. Co.* 174 Fed. 739, 750, it was said:

"What power is delegated by the express power to 'regulate' the streets and alleys of the city? Manifestly, something was meant by the power to 'regulate.' The word 'regulate' imports the power to control the use of the streets, and is indeed a power of wider import than 'control' or the power to 'consent' to an easement of way."

Holding to the broad meaning suggested, there are many circumstances of imposition of burdens upon railway companies, telegraph companies, telephone companies, and persons possessing franchises for conducting public utility business, as a condition of using streets.   Such impositions when thought to be within reason and for regulation instead of revenue, have been uniformly upheld. . With that idea railroads have been compelled to abolish grade crossings in cities by lowering or raising tracks, and to pay the expense of constructing and keeping in repair and reconstructing crossings regardless of any conditions in their charters expressly so requiring.   This court took advanced views on that in *Chicago, M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118, which has been many times followed and approved as a leading authority.   There this court discussed, at considerable length, the conflict of authority as regards the right of a municipality to burden, under the police authority to regulate, a railway company, using to any extent a public way, with the expense of constructions reasonably required, in the public interests.   It was shown that the broad power of regulation, so hard to define definitely but so extensive in fact, having no limitations except legitimacy of purpose and reasonableness of means, had been lost sight of by many courts,—resulting in matters within it being treated from the standpoint of whether they were not breaches of contract rights.   It had been overlooked, as was thought, that a municipality cannot materially, if at all, contract away its police power; that if

it should attempt to do so the attempt would be futile.    That being so, how much the power is dignified, so to speak, emphasized, where, in the franchise grant, as in this case, the privilege is made expressly dependable upon observance of "all such reasonable regulations of the streets and highways as the council may see fit from time to time to enact." ·

In *Eastern Wis. R. & L. Co. v. Hackett,* 135 Wis. 464, 115 N. W. 376, 1136, 1139, an ordinance of the city of Oshkosh was challenged as violative of the railway company's franchise contract rights.    The ordinance required the railway company to make important and expensive physical changes at its own expense.    The court, speaking by Mr. Justice Timlin, held that the acts of the city were well within its power of regulation which was not impaired by anything contained in the street-car franchise, but rather confirmed thereby, and, particularly, referred to sec. 1862, Stats. (1898), declaring that a street railway company shall be "subject to such reasonable rules and regulations . . . as the proper municipal authorities may by ordinance from time to time prescribe," and also referred to *Chicago, M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118.    We should note, in passing, that the general statute, thus given efficiency in the Oshkosh case, quite as logically applies here,—especially, since the conditions of the grant expressly required subserviency "to all general provisions of statute law now in force and applicable."

Now can there be any doubt but that, even without special authorization to municipalities in granting the use of streets within their limits for street railway purposes to impose reasonable conditions as to regulation, they commonly exercise such power and make grants in that regard upon condition as to repair and also paving and repaving within the railway zone?    All such conditions which are reasonable and imposed for regulation, as distinguished from revenue purposes, have been sustained.    It must be conceded that the requirement to

pave in the old ordinance, was matter of regulation. It might have been, and probably was, made a condition of the new grant as matter of regulation rather than matter of contract. If such a provision is within the power of reasonable regulation in case of an original grant, and of that there can be little or no doubt, when did the city of *Madison* lose that power?

If it could fairly be said that all not within reasonable requirements for public safety, in such a case, may be parted with by contract, or is so parted with in case of a grant without specific reservations covering the subject, *State ex rel. St. Louis U. S. Co. v. Murphy,* 134 Mo. 548, 31 S. W. 784, 34 S. W. 51, 35 S. W. 1132,—here there was such reservation *ex industria* and most emphatically made by the direct reference to existing statute law, and making subserviency thereto and to municipal requirements thereunder and the provision in the language of the statute a condition of the grant.

Was it for any mere narrow purpose of conserving public safety in a field unquestionably covered by the police power, that the significant new provision was made a part of the ordinance? Does it not seem clear that the purpose was, in addition to ordinary police authority, to retain power to make regulative requirements within the broader field of police power and perhaps beyond,—power to make such reasonable requirements from time to time as changed conditions might render necessary in the interest of public welfare, whether technically within the field of ordinary police regulations or not? For things within such ordinary field no reservation of authority was needed. Nothing in the grant did or could impair it even to the extent of even involving it in doubt.

Must we not then, logically, conclude that the whole new condition in the ordinance was embodied therein for a very considerate and important special purpose? It could not have had reference to mere operation of cars on the road be-

cause, as we have seen, that was specially and separately pro-
vided for. What could the parties to the grant have had
reference to except things in the broad and most comprehen-
sive field of regulation,—such things as gave rise to this liti-
gation? What possible justification or excuse was there for
omitting to incorporate into the new grant the provision of
the old one on the subject of paving, except that it was mat-
ter of reasonable regulation of the streets and highways in
the broad sense of sec. 1862 aforesaid and certainly covered
by the express conditions of the grant, especially in connec-
tion with the duty as to "proper repair"? The mere spe-
cific duty was dropped out and a broad condition was sub-
stituted embodying the statute affording the municipality the
stronger position.

The foregoing gives much significance to the manner of
municipal proceedings in respect to the particular pave-
ment. It did not, merely, notify appellant to put the street
in "proper repair" as if seeking to arouse defendant's duty
in that regard. It adopted, in the most formal way, an ordi-
nance, in effect, ordering appellant to make the improvement.
That pretty clearly was thought to be warranted by the con-
dition of the franchise making it dependable upon conform-
ing, in respect to the streets and highways, to "such reason-
able rules and regulations" in respect thereto "as the said
council may from time to time enact." If the particular con-
dition has reference to physical conditions within the railway
zone,—of which I am convinced, and the members of the
court, except as aforesaid, are constrained to believe,—in
view of the findings of fact, it probably would be conceded by
all that the particular regulation is reasonable.

Up to this point we have discussed the second ground re-
quiring affirmance as an original matter. But need it be so
considered? It seems that sec. 1862 of the Statutes was over-
looked below and here. Why so when its significance in view
of the principle at stake was passed upon in *State ex rel. Att'y*

*Gen. v. Madison St. R. Co.* 72 Wis. 612, 40 N. W. 487, in
respect to the original charter of appellant? It was there
contended, in an original action in this court to annul the
company's franchise, that its failures to comply with mu-
nicipal requirements were, at most, mere breaches of con-
tract; but the court held that they were breaches of the con-
ditions upon which the grant was made and held that sec.
1862 of the Statutes was in itself a sufficient answer to all the
company's contentions. The spirit of the decision is that such
statute is a part of such a franchise and contemplates that the
municipality shall have the broad continuing power of regu-
lation, enabling it to deal with conditions as they may exist
from time to time. The significant language of the statute
was specially referred to "subject to such reasonable rules
and regulations as the proper municipal authorities may by
ordinance from time to time prescribe." The idea of the
lawmakers is that the broad power is not subject to exhaus-
tion or limitation by any specific requirement in the grant.
Note the words "from time to time," showing the legislative
idea was that changed conditions, within the life of such a
franchise, will be quite likely to require physical and other
changes in the manner of using the streets which could not
be foreseen and particularly provided for in advance. The
litigation, in which the decision referred to was made, ter-
minated a short time before the common council of the city
of *Madison* came to deal with the matter of the substitute
ordinance. It was doubtless fresh in the minds of its mem-
bers and they gave such dignity to sec. 1862, in connection
with the proper repair provision, as to suppose nothing more
to be needed; so the special provision on the subject of paving
was omitted and the new one added, giving special prominence
to the statute by the words "subject to all general provisions of
statute law now in force and applicable thereto" so recently
passed upon and given the broad comprehensive meaning in-
dicated, followed by substantially the very language of the

statute. This history gives striking significance to the circumstance that the requirement in this case was made by a formal ordinance following the terms of the statute and the franchise as well.

*By the Court.*—Judgment is affirmed.

SIEBECKER, J., took no part.

BARNES, J. (*dissenting*). It is pointed out in the *Milwaukee Case* (151 Wis. 520, 139 N. W. 396) that the weight of authority is to the effect that an obligation imposed on a street railway company to keep the portion of the streets between and adjacent to its tracks in a proper state of repair does not impose the duty of repaving. Some stress is laid on the fact that the duty imposed was not simply to repair the pavement, but to "keep and maintain in good and thorough repair during the continuance of said term" a certain portion of the street. Page 529. In the case before us for decision now the street railway company is required to keep the street in "proper repair." It was held in the *Milwaukee Case* that the language of the ordinance was broad enough to include repaving if the parties intended that it should be included, and, there being doubt about what the intent was, it was held that the ordinance should be construed strictly against the railway company and liberally toward the public. Proceeding on this line of reasoning, the court decided that the street railway company was bound to repave. Were it not for the ordinance granted defendant's predecessor in 1884, I should find no difficulty in saying that the decision in the *Milwaukee Case* should govern the present one.

It must be conceded (1) that the ordinance before us does not by express language cover repaving; (2) that the majority of courts hold that it does not do so by implication; and (3) that the ordinance, being ambiguous, must be construed so as to carry out the intention of the parties, if that inten-

tion can be ascertained with reasonable certainty. There is no question of private or public consideration that can ever justify a court in placing a construction on an ambiguous contract known to be one that defeats the intention of the parties thereto, and neither is there any justification for construing an ambiguous act of the legislature or of a common council so as to defeat the intent of the legislative body, if that intent is manifest.

To my way of thinking it is perfectly clear that the parties to this franchise did not intend to impose the cost of repaving on the railway company.

The council when it adopted the 1884 franchise had clearly in mind that the obligation to repair did not or might not include that of repaving. Sec. 2 of that ordinance covered repairing and was literally copied into the ordinance of 1892. Sec. 3 of the 1884 ordinance expressly and definitely covered the matter of repaving. This was entirely omitted from the ordinance of 1892 and was repealed by it. So we have a case where the council had before it an existing ordinance which required both repairing and repaving to be done and where it repealed the section imposing the duty to repave and re-enacted the one which imposed the duty to repair, and yet it is said that it intended to impose both duties on the defendant. I can well see how a council might ordinarily think that the duty to repair included the duty to repave. But where the ordinance which was about to be superseded and repealed specifically imposed both duties, it is inconceivable that, if it was intended to impose both by the new ordinance, the part of the old which provided for one of them should be actually repealed. The attention of the council was sharply called to the fact that repairing and repaving were two different things.

The ratiocination by which the conclusion is reached that the council of 1892 was guilty of gross negligence, if not something worse, unless it was intended to impose the duty to

repave, seems to me to be passing strange.   Within their
delegated powers common councils can grant such franchises
as they see fit.    It is a perfectly harmless occupation if no one
is willing to accept the thing granted.    Franchises are es-
sentially contracts, generally arrived at as the result of mu-
tual concessions.    In all probability the defendant was not in
as prosperous a condition twenty-one years ago as it is now.
It was then operating cars propelled by horse power.    The
city no doubt desired rapid transit, and the principal purpose
of the 1892 ordinance was to permit the street railway com-
pany to electrify its lines.    There was plenty of consideration
for relieving it from the burden of repaving, and it would be
assuming altogether too much to say that such relief was
granted because the council was either incompetent or dis-
honest.

The right to lay tracks in the street was granted subject "to
such reasonable rules and regulations respecting such streets
and highways and operation of cars as the said council may
from time to time enact."    I do not conceive that this general
provision covers anything aside from the manner in which
the streets should be used and in which cars should be oper-
ated therein.    It seems to me to be far fetched to say that the
reservation of the right to pass the rule or regulation referred
to comprehended the right to compel the construction of a
part of a street.    If a part, why not the whole?    If the
whole, then an easy way has been discovered to relieve the city
from the expense of street building along the line of defend-
ant's road.    I confess that I am too dense to see how the right
to pass a rule or regulation respecting a street gives authority
to compel a user to build it. ·   The city having by express pro-
vision in the franchise specified what the defendant was re-
quired to do in the way of repairing streets, and having re-
pealed the provision of the old ordinance in regard to the
repaving, it is perfectly manifest that the general provision
above quoted was not intended to cover repairing or repaving.